

**NUMBER 13-06-629-CV**

# COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

---

**TEXAS SOUTH RENTALS, INC., A/K/A TEXAS
SOUTH INC. AND THE HERTZ CORPORATION,**　　　　　　　**Appellants,**

**v.**

**JOSE M. GOMEZ, INDIVIDUALLY AND ON BEHALF
OF ALL OTHERS SIMILARLY SITUATED PERSONS,**　　　　**Appellee.**

---

**On appeal from the 214th District Court of Nueces County, Texas.**

---

# O P I N I O N

**Before Justices Yañez, Rodriguez, and Benavides
Opinion by Justice Benavides**

This is an interlocutory appeal by appellants, the Hertz Corporation and Texas

South Rentals, Inc.,[1] from an order certifying a class of plaintiffs and designating appellee,

Jose M. Gomez, as class representative. Hertz and Texas South have raised numerous

---

[1] Texas South Rentals, Inc. is also known as Texas South, Inc. We will refer to it as "Texas South."

issues challenging the class-certification order.[2] For the following reasons, we reverse the trial court's order, decertify the class, and remand to the trial court for further proceedings consistent with this opinion.

## I. Background

Hertz is a nationally operated rental car company. Texas South is an independently owned and operated Hertz licensee. As part of these companies' rental agreements, a customer is presented with three refueling options. First, the companies offer a "fuel purchase option" or "FPO." Under this option, the companies charge the customer up-front for a full tank of gas at a specified price per gallon. The customer can then return the car with less than a full tank of gas without incurring any additional charge. According to Gomez, the FPO is typically close to the market price for gas in the immediate surrounding area.

Second, a customer may refuel the car before returning it to the rental location. This option requires the customer to return the car with a full tank of gas, and the price the customer paid for the gas is obviously dependent upon his or her selection of a gas station.

The dispute in this case centers on the third option. If the customer does not pre-pay for gas under the FPO option and does not return the car with a full tank of gas, the companies charge a "fuel and service charge" or "FSC" to refuel the car. The price per gallon of gasoline under this option is higher than the FPO.

On January 17, 2003, Gomez rented a car from Texas South. At the time of the rental, these options were explained in the rental agreement and by the customer service

---

[2] The order certifying the class is thirty-six pages long, and we have attached the entire order as an appendix to this opinion.

representative. In fact, Gomez's rental agreement states, in all caps, that "THE PER GALLON COST OF THE FUEL PURCHASE OPTION WILL ALWAYS BE LOWER THAN THE FUEL AND SERVICE CHARGE." In Gomez's rental agreement, the price for the FSC was $3.99 per gallon.

Gomez did not purchase the FPO and did not refuel the car before returning it to Texas South. Texas South, therefore, imposed an FSC of $52.04. Gomez paid the charge and did not dispute it with Texas South. Over a year later, Gomez filed suit against Hertz on February 6, 2000. Later, on September 15, 2000, he amended his pleadings to include Texas South.

Gomez alleged claims for common-law fraud, illegal penalty, unconscionability, and breach of contract. In order to establish liability on Hertz, Gomez alleged several agency theories of liability, including apparent authority, agency by estoppel, ratification, vice principal, joint enterprise, conspiracy, and partnership. Gomez pleaded class allegations and sought to certify a class action of all Texas residents who paid an FSC after February 6, 2000.

Hertz and Texas South pleaded numerous affirmative defenses, such as voluntary payment, waiver, ratification, estoppel, and accord and satisfaction. Additionally, Texas South asserted that claims by class members who paid an FSC before September 15, 2000 would be barred by the four-year statute of limitations.

Gomez moved to certify the class. After numerous filings by the parties and a hearing, the trial court certified a class consisting of "[a]ll Texas residents who were charged an FSC in Texas after February 6, 2000." Appendix at p. 36. The trial court's order further clarified the limits of the class definition as follows:

3

This is a statewide Class only. Excluded from the foregoing Class are rentals that commenced anywhere other than at a Hertz location in the State of Texas; the presiding judge of the court in which this cause is filed, any other judge assigned to that court or to this cause, the immediate family of such judge(s), Class counsel, and each of the defendants and their respective officers, directors, employees, agents, and attorneys.[3]

*Id.* at pp. 35-36.[4] This interlocutory appeal ensued. TEX. CIV. PRAC. & REM. CODE § 51.014(a)(3) (Vernon Supp. 2007).

## II. Standard of Review

We review an order certifying a class under an abuse of discretion standard. *Stonebridge Life Ins. Co. v. Pitts,* 236 S.W.3d 201, 204-05 (Tex. 2007). However, we must do so "without indulging every presumption in favor of the trial court's decision." *Id.* at 205 (citing *Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 691 (Tex. 2002)). We review the trial court's order to determine whether the plaintiff demonstrated actual compliance with Texas Rule of Civil Procedure 42. *Id.* Compliance may not be presumed, but it must be apparent from the record and the trial court's order. *See id.*

All class actions must satisfy the four threshold requirements set out in rule 42(a): (1) the class must be so numerous that joinder of all members is impracticable; (2) there must be questions of law or fact common to the class; (3) the claims or defenses of the representative parties must be typical of the claims or defenses of the class; and (4) the

---

[3] It is arguable that this exclusion, by its terms, certifies the class claims only against Hertz and not against Texas South. The trial court's certification order rarely mentions Texas South or identifies it as a separate defendant—an infirmity we rely upon for our holding in Part IV. The trial court assumed that the FSC was "borne out of and distributed by a corporate policy, regardless of whether the entity imposing the charge is a corporate location or a licensee," Appendix at p. 5, and we believe that the trial court did not intend by the language in its order to exclude Texas South as a defendant. Texas South likewise assumes that the order certifies a class against it. We will do the same.

[4] In the interest of brevity, we will only discuss the contents of the order where it is pertinent to our analysis.

4

representative parties must be capable of fairly and adequately protecting the interests of the class. TEX. R. CIV. P. 42(a); *see Sw. Ref. Co. v. Bernal,* 22 S.W.3d 425, 433 (Tex. 2000).

Additionally, the class must satisfy at least one of the requirements set forth in rule 42(b). TEX. R. CIV. P. 42(b). In this case, Gomez has alleged that he satisfies rule 42(b)(3), which requires that common questions of law or fact predominate over questions affecting only individual class members and that class treatment is superior to other methods of adjudication. *Id.* at R. 42(b)(3).

The trial court is required to look beyond the parties' pleadings, investigate the factual and legal bases for all the claims, and explain in a detailed trial plan how the claims will proceed as a class. *Bernal*, 22 S.W.3d at 435. In the absence of such an analysis, it is nearly impossible for a reviewing court to evaluate whether the class requirements have been satisfied. *State Farm Mut. Auto. Ins. Co. v. Lopez*, 156 S.W.3d 550, 556-57 (Tex. 2004).

### III. Predominance Requirement

Hertz and Texas South assail the trial court's findings regarding typicality, adequacy of representation, predominance of common issues, superiority of the class vehicle, and the trial plan requirement. Because the predominance requirement is one of the "most stringent prerequisites to class-action certification," we begin by addressing Hertz and Texas South's arguments that common issues will not predominate in this case. *Stonebridge Life Ins. Co.,* 236 S.W.3d at 205.

A class may be certified under Texas Rule of Civil Procedure 42(b)(3) when "the questions of law or fact common to the members of the class predominate over any

5

questions affecting only individual members . . . ." TEX. R. CIV. P. 42(b)(3). Stated conversely, a class cannot be certified under this provision when "complex and diverse individual issues would overwhelm or confuse a jury or severely compromise a party's ability to present otherwise viable claims or defenses." *Stonebridge Life Ins. Co.*, 236 S.W.3d at 205 (citing *Henry Schein, Inc.,* 102 S.W.3d at 690).

Predominance of common issues, as with all prerequisites to certification, must be rigorously examined by the trial court. *Henry Schein, Inc.*, 102 S.W.3d at 694; *Bernal*, 22 S.W.3d at 434. "The test for predominance is not whether common issues outnumber uncommon issues but . . . whether common or individual issues will be the object of most of the efforts of the litigants and the court." *Bernal*, 22 S.W.3d at 434 (quoting *Central Power & Light Co. v. City of San Juan*, 962 S.W.2d 602, 610 (Tex. App.–Corpus Christi 1998, pet. dism'd w.o.j.)). The trial court must decide at the outset that any individual issues can be determined in a "manageable, time-efficient and fair manner"; otherwise, certification is improper. *Stonebridge Life Ins. Co.*, 236 S.W.3d at 205.

In conducting this inquiry, the trial court must identify the substantive issues involved, assess which of those issues will predominate, and determine if the predominating issues are those common to the class. *Id.* at 205; *Bernal,* 22 S.W.3d at 434. "Ideally, 'a judgment in favor of the class members should decisively settle the entire controversy, and all that should remain is for other members of the class to file proof of their claim.'" *Exxon Mobil Corp. v. Gill,* 221 S.W.3d 841, 856 (Tex. App.–Corpus Christi 2007, pet. filed) (quoting *Bernal*, 22 S.W.3d at 434).

The trial court analyzed Gomez's claims and found that there are no individual issues with respect to any of the claims. Appendix at pp. 16, 19, 21, 22, 24, 26, 30, 34-35.

6

Thus it found that common issues would predominate. Both Hertz and Texas South advance several arguments against this finding. First, they argue that the class fraud claims demand an individualized inquiry into whether the alleged misrepresentations were material to the class members and whether the class members justifiably relied on the alleged misrepresentations. Second, they argue that the class claims are subject to the voluntary payment defense, which requires an individualized inquiry into the class members' knowledge. Third, they argue that to the extent the class's breach of contract and U.C.C. claims are based on unconscionability, those claims raise individual issues of the class members' knowledge, ability, experience, and capacity. Finally, Texas South raises an additional argument, which Hertz has not argued in its briefs. Texas South argues that consumer status is required for the class claims under the U.C.C., and that this inquiry will raise insurmountable individual issues.[5]

## A. Fraud Claim

The elements of a fraud or fraudulent concealment claim are: (1) the speaker made a material representation; (2) the representation is false; (3) the speaker knew the representation was false or made it recklessly without any knowledge of the truth; (4) the speaker made the representation with the intent that the other party act upon it; (5) the party acted in reliance on the representation; and (6) the relying party suffered an injury. *See Formosa Plastics Corp. v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998); *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 181 (Tex. 1997). Hertz and Texas South argue that Gomez's fraud claims will require individualized inquiry

---

[5] Hertz and Texas South further argue that individual issues will predominate with respect to agency theories Gomez pleaded as a means to establish liability against Hertz. That issue is discussed in Part IV.

7

into whether the alleged misrepresentations were material to the class members and whether the class members relied on the alleged misrepresentations. Accordingly, they argue that individualized issues will predominate, as they will have to question each class member regarding his or her knowledge and understanding of the FSC.

Gomez counters, and the trial court agreed, that materiality and reliance can be determined on a class-wide basis. Specifically, the trial court held:

> This is a case where Plaintiff's claim for fraudulent misrepresentation, as will be demonstrated in the proposed Trial Plan, is subject to Class-wide treatment, because it is based upon a uniform, written misrepresentation, and reliance is evidenced by the act of paying that express charge at the conclusion of the rental.

Appendix at p. 19. The trial court cited *Henry Schein, Inc. v. Stromboe*, where the Texas Supreme Court stated in dicta that class-wide proof of reliance could be possible in a fraud claim where class-wide evidence existed. 102 S.W.3d at 693-94. The trial court concluded that class-wide evidence existed here because the "act of paying demonstrates that [the customers] are relying upon the charge as what it states: A charge for fuel and for service." Appendix at p. 19. The trial court referred to this as the "invoice theory of reliance." *Id.* at p. 21.

The analysis of these issues necessarily requires a discussion of the Texas Supreme Court's decision in *Schein*. 102 S.W.3d at 693-94. In *Schein*, the trial court certified a class of consumers who purchased computer software. *Id.* at 678. The purchasers alleged that the software company falsely represented that the software could perform certain tasks and was suitable for the purchasers' use in their dental practices. *Id.* at 679-80. The software company argued that the class should not be certified because individual reliance issues would predominate. *Id.* at 693.

8

After noting that several of the purchasers' claims[6] required reliance as an element of proof, the supreme court reiterated its holding in *Southwest Refining Co. v. Bernal* that the class vehicle is not supposed to enhance or diminish a party's ability to present the substantive merits of its case:

> [t]he class action is a procedural device intended to advance judicial economy by trying claims together that lend themselves to collective treatment. It is not meant to alter the parties' burdens of proof, right to a jury trial, or the substantive prerequisites to recovery under a given tort. Procedural devices may "not be construed to enlarge or diminish any substantive rights or obligations of any parties to any civil action." Although a goal of our system is to resolve lawsuits with "great expedition and dispatch and at the least expense," the supreme objective of the courts is "to obtain a just, fair, equitable and impartial adjudication of the rights of litigants under established principles of substantive law." This means that "convenience and economy must yield to a paramount concern for a fair and impartial trial." And basic to the right to a fair trial—indeed, basic to the very essence of the adversarial process—is that each party have the opportunity to adequately and vigorously present any material claims and defenses.

*Id.* at 693 (quoting *Bernal,* 22 S.W.3d at 437) (internal citations omitted). In other words, class plaintiffs must be held to the same standards of proof as an individual plaintiff. *Id.*

However, the supreme court's next statement is the spark that ignited the instant dispute between the parties in this case. The supreme court clarified that it *was not* holding that a fraud class could never be certified due to individual reliance issues. *Id.* Rather, the court suggested the possibility that a class representative could produce class-wide evidence of reliance, satisfying the predominance requirement:

> This does not mean, of course, that reliance or other elements of their causes of action cannot be proved class-wide with evidence generally applicable to all class members; *class-wide proof is possible when class-wide evidence exists.* But evidence insufficient to prove reliance in a

---

[6] The court addressed the purchasers' fraud, breach of express warranty, negligent misrepresentation, promissory estoppel, and DTPA "laundry list violations," which all had reliance as an element. *Henry Schein, Inc. v. Stromboe,* 102 S.W.3d 675, 693 (Tex. 2002).

suit by an individual does not become sufficient in a class action simply because there are more plaintiffs. Inescapably individual differences cannot be concealed in a throng. The procedural device of a class action eliminates the necessity of adducing the same evidence over and over again in a multitude of individual actions; it does not lessen the quality of evidence required in an individual action or relax substantive burdens of proof. If a plaintiff could prove reliance in an individual action with the same evidence offered to show class-wide reliance, then the issue is one of law and fact common to the class. The question the court must decide before certifying a class, after rigorous analysis and not merely a lick and a prayer, is whether the plaintiffs have demonstrated that they can meet their burden of proof in such a way that common issues predominate over individual ones.

*Id.* at 693-94 (emphasis added).

Gomez seizes upon this language and argues that he presented class-wide evidence of reliance by merely showing that Hertz and Texas South customers were charged the FSC. In other words, because Hertz and Texas South misrepresented that the FSC was for "fuel and service" and did not disclose the hidden profit element, and the class members paid for the FSC without knowing what it truly was, the class members necessarily relied on the misrepresentation. Gomez reasons, therefore, that if reliance is established as to Gomez, it is established as to the entire class. We disagree that this is the rare case the supreme court envisioned by its statements in *Schein.*

In *Schein*, the purchasers argued that they presented class-wide evidence of reliance. *Id.* at 694. The court looked to the record and determined that although there was "evidence that Schein *wanted* purchasers to rely on its advertisements and other representations about its software products," there was "no evidence that purchasers *actually did* rely on Schein's statements so uniformly that common issues of reliance predominate over individual issues." *Id.* In doing so, the court placed the burden on the plaintiff to bring forward a record demonstrating that the trial court had complied with the requirements for certifying a class under rule 42(b)(4). *Id.*

10

Furthermore, the court noted that the record actually supported the opposite of the purchasers' arguments—testimony appeared in the record showing that some of the purchasers relied on recommendations by colleagues in purchasing the software rather than on Schein's representations. *Id.* Accordingly, the court held that the purchasers failed to demonstrate compliance with the predominance requirement in rule 42(b)(4). *Id.*

Since the supreme court's decision in *Schein*, we have addressed class claims involving reliance elements on two separate occasions.[7] In *Ford Motor Co. v. Ocanas*, we reviewed an order certifying a class of plaintiffs who purchased Ford F-150 trucks with an optional towing package. 138 S.W.3d 447, 449 (Tex. App.–Corpus Christi 2004, no pet.). The F-150 with a towing package was marketed as having a larger radiator than those without the towing package, but due to a manufacturing error, the larger radiator was not included. *Id.* The class alleged "laundry list" violations of the Texas Deceptive Trade Practices Act ("DTPA"), which required reliance as an element of proof. *Id.* at 453.

After summarizing the holding in *Schein*, we focused particularly on *Schein's* determination that the plaintiffs had not produced any class-wide evidence that purchasers actually relied on the defendants' misrepresentations in a uniform manner. *Id.* (citing *Henry Schein, Inc.*, 102 S.W.3d at 693). For those same reasons, we held that the trial court improperly certified the class of F-150 purchasers:

> Like the plaintiffs in *Henry Schein, Inc.*, appellees pleaded breach of express and [implied] warranties and DTPA "laundry list" violations which require each class member to prove reliance as a prerequisite to recovery. Further,

---

[7] In dicta in *Southwestern Bell Telephone Co. v. Marketing on Hold, Inc.*, we surmised that class-wide evidence of reliance could exist in that case. 170 S.W.3d 814, 827-28 (Tex. App.–Corpus Christi 2005, pet. granted). However, we did so only on the assumption that reliance was not an element of the causes of action pleaded in that case. *Id.* The parties do not dispute that reliance is an issue in this case, and we are not constrained by our prior decision in *Southwestern Bell*, which is currently under review by the Texas Supreme Court.

although there is evidence that appellant intended for customers to rely on representations that F-150s with a Class III towing package would come with larger radiators, "there is no evidence that purchasers actually did rely" on appellant's statements "so uniformly that common issues of reliance predominate over individual issues." The supreme court noted that it is possible to certify a class where reliance is a required element of proof if the plaintiffs can "prove reliance in an individual action with the same proof offered to show class-wide reliance." However, appellee did not meet this burden.

*Id.* (citations omitted).

Later, in *Fidelity & Guaranty Life Insurance Co. v. Pina*, we reviewed an order certifying a consumer fraud class. 165 S.W.3d 416, 418 (Tex. App.–Corpus Christi 2005, no pet.). There, the consumers purchased annuities that paid a high interest rate on deposits into the annuities. *Id.* The consumers alleged that the defendant failed to disclose that a lower interest rate would apply to payments the consumers made into the annuities after the first year of ownership. *Id.* at 419. Addressing the reliance element of the consumers' DTPA and fraud claims, we noted the difficulty of establishing reliance in a group setting:

Reliance is a thought process or one step in a larger thought process; . . . [it] can be shown only by demonstrating the person's thought processes in reaching the decision. Proof of reliance or lack of reliance necessarily requires an *individualized* determination because, under all the same facts and circumstances, one person may have relied on the misrepresentation in reaching a decision while another did not rely on it in reaching the same decision.

*Id.* at 423 (quoting *Grant Thornton, L.L.P. v. Suntrust Bank*, 133 S.W.3d 342, 355 (Tex. App.–Dallas 2004, pet. filed) (emphasis added)). After crediting *Schein's* invitation to establish reliance on a class-wide basis, we relied on our earlier holding in *Ford* and held that the consumers had not put on class-wide evidence of reliance. *Id.* at 424. Although each of the named plaintiffs testified that they relied on the high interest rate applicable in

the first year of their contracts, none of the named plaintiffs indicated "how or whether other members of the class may have weighed the importance of the new money interest rate in making their investment decision." *Id.* Accordingly, the plaintiffs did not produce any evidence of class-wide reliance. *Id.*

We noted that although the supreme court in *Schein* "did not entirely preclude class actions in which reliance was an issue, . . . it did make such cases a near-impossibility." *Id.* at 423. We questioned whether given the individualized nature of reliance, any class action could ever be certifiable under *Schein,* and we noted that from the time of the *Schein* decision in 2002 to the time we decided *Fidelity* in 2005, no Texas court had "encountered a situation in which class-wide proof of reliance could be found." *Id.* at 424-25. The same still holds true—no court since *Schein* has ever found evidence of class-wide reliance.

Like the plaintiffs in *Schein, Ford Motor Co.,* and *Fidelity,* Gomez has failed to point us to any evidence in the record demonstrating that the class as a whole relied on representations by Hertz and Texas South that the FSC constituted only a charge for fuel and service. In fact, Gomez does not point to any evidence in the record demonstrating that he actually relied on a belief that the FSC was only for fuel and service. Moreover, under the facts of this case, it is not hard to imagine how individual issues of reliance could arise. There are numerous circumstances in which a customer might choose the convenience of the FSC regardless of his or her knowledge of the FSC's composition. Accordingly, "[i]t is thus clear that answering the questions of materiality and reliance as to one plaintiff does not answer the same question as to other putative class members." *Peltier Enters., Inc. v. Hilton*, 51 S.W.3d 616, 623 (Tex. App.–Tyler 2000, pet. denied).

13

Gomez failed in his burden to show that reliance issues will not predominate in the litigation.

Nevertheless, Gomez directs us to pre-*Schein* cases that he argues demonstrate that class-wide evidence exists in this case due to the mere fact that Hertz and Texas South's customers paid the FSC. First, he cites *Graebel/Houston Movers, Inc. v. Chastain*, 26 S.W.3d 24, 34 (Tex. App.–Houston [1st Dist.] 2000, pet. dism'd w.o.j.). In *Chastain*, the plaintiffs stored their property with a company while they were overseas. *Id.* at 28. The plaintiffs' contract said that the defendant company had purchased insurance for the property, and the plaintiffs were charged for the insurance. *Id.* As it turned out, the plaintiffs were not named as insureds on the policies, and they brought a class action for fraud. *Id.* The trial court certified the class, and the court of appeals affirmed. *Id.* at 35.

On appeal, the defendant argued that reliance issues would predominate at trial. *Id.* at 34. The court of appeals disagreed and held that common issues predominated, making the following statements:

> The predominant issue in this case is not whether Graebel made misrepresentations to each individual class member; the predominant issue is whether Graebel billed and collected premiums for "storage insurance," and then failed to procure such a policy. Although some issues, such as the Chastains' claim for damage to their property, will have to be litigated individually, the trial court did not abuse its discretion in finding that the common issues regarding the refund of "insurance premiums" predominate in this case.

*Id*.

Additionally, Gomez cites to *Alford Chevrolet-Geo v. Jones*, 91 S.W.3d 396 (Tex. App.–Texarkana 2002, pet. denied). In that case, the plaintiffs brought a fraud class action against several car dealerships that were charging what they called a "vehicle inventory tax." *Id.* at 399. Really, the tax was imposed on the dealerships, not the customers, but

14

the dealerships were allegedly passing the taxes through to the customers and representing that the customers, not the dealers, owed the taxes. *Id.* The trial court certified the fraud class, *id.*, and the dealers argued on appeal that common issues did not predominate. *Id.* at 404-05.

The Texarkana Court of Appeals held that reliance could be proven on a class-wide basis by the mere fact that the customers paid the tax billed by the dealerships:

> The Dealers also take the position that at the least each class member must demonstrate he or she relied on the misrepresentation. The allegations are that the consumers paid a tax they did not owe because they were billed for the tax by the Dealers. That alone is an allegation of reliance.

*Id.* at 405. The court of appeals then reviewed and relied on the *Chastain* decision, concluding that in *Chastain*, the charge itself was sufficient to satisfy the certification requirements. *Id.* at 406.

Although *Chastain* and *Alford* appear to hold that payment alone sufficed to prove reliance,[8] we decline to follow them. First, the *Chastain* opinion glossed over the reliance and materiality elements. *Chastain*, 26 S.W.3d at 34. In *Chastain,* the court identified the representation and the later charge for insurance as the "predominant issue," the court did not actually address materiality and reliance and the effect those elements had on certifying the class. *Id.* The Texarkana Court of Appeals in *Alford* read *Chastain* as holding that mere payment by the plaintiffs showed reliance, but we do not read it as definitively resolving the questions of whether materiality and reliance issues would predominate. *Alford,* 91 S.W.3d at 406. Moreover, we have located no other Texas case

---

[8] The supreme court denied review in *Alford* and dismissed for want of jurisdiction in *Chastain.* A denial of review or a dismissal of a petition for want of jurisdiction by the Texas Supreme Court is not a comment on the correctness of the court of appeals' opinion below, although parties often argue as much. *See* TEX. R. APP. P. 56.1(b)(1), (2); *see also* Dylan O. Drummond, *Citation Writ Large*, The Appellate Advocate, State Bar of Texas Appellate Section Report, Vol. 20 No. 2, pp. 103-05 (Winter 2007).

that has expressly recognized an "invoice theory" of reliance, as was apparently adopted in *Alford*.

More importantly, both these cases were decided before *Schein*. Although these cases were decided before *Schein*, *Schein* did not cite to either case as exemplifying class-wide evidence of reliance. In fact, *Schein* did not cite to *any* cases as examples of when class-wide reliance had existed. *Henry Schein, Inc.*, 102 S.W.3d at 694-95. Because there is no evidence in this case of class-wide reliance and materiality, the trial court abused its discretion in determining that individual issues will not predominate.

**B.      Voluntary Payment Defense**

Hertz and Texas South attack the trial court's evaluation of the voluntary payment defense and its application to the class claims. Here, the trial court certified the following claims: (1) an unconscionability claim, TEX. BUS. & COMM. CODE ANN. § 2A.108 (Vernon 1994) ("U.C.C. § 2A.108"); (2) an illegal penalty claim, *id.* § 2A.504 (Vernon 1994) ("U.C.C. § 2A.504"); (3) breach of contract; and (4) fraud. Hertz and Texas South argue that the U.C.C. and breach of contract claims are subject to the voluntary payment defense, which bars the recovery of money voluntarily paid "with full knowledge of all the facts and without fraud, deception, duress, or coercion." *BMG Direct Mktg., Inc. v. Peake*, 178 S.W.3d 763, 765 (Tex. 2005). Hertz and Texas South argue that this defense bars the class claims as a matter of law or, at the least, will require an individual evaluation of the facts as they relate to each unnamed class member. In particular, Hertz and Texas South argue that each class member will have to be questioned about whether he or she had "full knowledge of all the facts."

16

Gomez, on the other hand, argues that his allegation of fraud defeats the voluntary payment defense as a matter of law. He argues that he did not have full knowledge of the facts because the "fuel and service charge" label is misleading, although he admits that he knew what the FSC was and how much it cost relative to his other re-fueling options. Hertz and Texas South respond that the allegation of fraud itself involves several individual issues, including materiality of the alleged representation and the customer's reliance on the representation.

The trial court determined that the voluntary payment rule "is not supported in regards to Plaintiff's claims as asserted, or under controlling authority." Appendix at p. 9. The trial court held that the voluntary payment defense would not likely apply to the claims because Gomez alleged fraud and because Gomez did not receive "full knowledge" of the facts until discovery was completed. *Id.* at p. 10. Finally, the trial court held that if the defense applied, it would apply to all class members and could be handled on a class-wide basis. *Id.* at p. 9. The trial plan does not specifically state how these issues could be handled class-wide, except to reiterate that the inquiry would apply to the class as a whole. *Id.* at pp. 32-33.

Hertz and Texas South argue that (1) the trial court's determination that the defense does not apply was erroneous; (2) the defense cannot be applied on a class-wide basis; (3) the trial court deprived them of their ability to present the defense at all by concluding that the defense can be applied on a class-wide basis; and (4) individual issues will predominate. Because Hertz and Texas South attack the trial court's analysis of the underlying law, we must first examine the class claims and the contours of the voluntary payment defense. *Exxon Mobil Corp.,* 221 S.W.3d at 847-48.

17

### 1.    UCC Illegal Penalty Claim

The Texas Supreme Court recently addressed the voluntary payment defense in *BMG Direct Mktg.*, 178 S.W.3d at 765.  In that case, BMG's customers were charged late fees after they failed to timely pay for compact disks in accordance with their agreements with BMG.  *Id.* at 765.  Peake, a BMG customer, brought a class action alleging that the late fees were illegal penalties that did not "reasonably forecast BMG's actual damages resulting from customers' late payments."  *Id.* at 766.  The trial court certified a class consisting of "all present and former BMG club members in Texas who had paid BMG late fees since May 16, 1998."  *Id.*

BMG argued that the voluntary payment defense applied to each customer's claim and caused individual issues to predominate.  *Id.*  The trial court, however, held that it was "unlikely" the voluntary-payment rule would apply because the "rule is equitable and 'need not be applied where the rationale for its existence does not exist.'" *Id.*  Additionally, the trial court held that the defense did not raise individual issues and could be determined on a class-wide basis.  *Id.*

On appeal, the Texas Supreme Court explained that under the voluntary payment defense, "'[m]oney voluntarily paid on a claim of right, with full knowledge of all the facts, in the absence of fraud, deception, duress, or compulsion, cannot be recovered back merely because the party at the time of payment was ignorant of or mistook the law as to his liability.'" *Id.* at 768 (quoting *Pennell v. United Ins. Co.*, 150 Tex. 541, 243 S.W.2d 572, 576 (1951)).  Peake argued that because BMG did not disclose how the late fees were calculated, he did not pay the late fees with "full knowledge of all the facts"; therefore, the defense was not implicated.  *Id.* at 773.  BMG argued that because it disclosed the late fee

18

and the circumstances under which the fees would be imposed, the customers had "full knowledge of the facts" sufficient to implicate the defense. *Id.*

The Texas Supreme Court agreed with BMG that "knowledge of a late fee's amount and the circumstances under which it will be imposed is sufficient to charge one with 'full knowledge of the facts' for purposes of the voluntary-payment rule's application." *Id.* Accordingly, the trial court erred in determining that the defense likely did not apply to Peake's illegal penalty claim. *Id.* at 773-74.

We see no distinction between *BMG* and the present case—although Gomez claims that Hertz and Texas South failed to disclose that the FSC had a hidden profit component, Hertz and Texas South disclosed the FSC and the circumstances under which it would apply. Thus, Gomez's knowledge was sufficient to trigger the defense's application to his illegal penalty claim. *See id.* But that does not end the inquiry here.

Hertz and Texas South argue that the "full knowledge" requirement will involve such an individualized inquiry that common questions do not predominate. We disagree. That is not what *BMG* held. *Id.* In fact, BMG conceded that the "knowledge" requirement could be established on a class-wide basis. *Id.* Hertz and Texas South can invoke the defense by merely proving that all their rental contracts contained a disclosure of the FSC and the circumstances under which it would apply. *Id.* The "thornier" issue, as the supreme court put it, is whether the defense can be defeated by Gomez's allegation of fraud. *Id.* The supreme court recognized in *BMG* that the traditional exceptions to the voluntary payment defense—fraud, duress, deception, and coercion—still apply. *Id.* at 776. In *BMG,* Peake argued that the late fees were not a reasonable estimation of the damages BMG suffered as a result of the customers' late payments. *Id.* at 775-76. The court

acknowledged that for purposes of the "full knowledge" requirement to invoke the rule, it would not make sense to require companies to disclose the method of calculating a particular charge. *Id*. at 773. Thus, the allegation of an illegal penalty alone would not preclude "full knowledge" sufficient to invoke the rule. *Id.* The court also held that the illegal penalty allegation, by itself, did not rise to the level of fraud to defeat the application of the voluntary payment defense. *Id.* at 775. The court was careful, however, to note that "the late fees were a set amount per month, and there is no allegation of mistake or fraud as to their calculation." *Id.* Because the court could not determine on the record in *BMG* whether Peake alleged any other reason that payment of the charge was involuntary, it remanded to the trial court to consider how the defense affected the ability to certify the class and how the claims could be tried. *Id.* at 778.

In contrast, Gomez has alleged that the label attached to the charge in this case, "Fuel and Service Charge," was misleading and fraudulent because it did not reveal the true nature of the charge. In other words, Gomez has alleged fraud as to the calculation of the charge. This is precisely the type of fraud allegation that *BMG* recognized was *not* present in that case. *Id.* at 775. Gomez argues that by alleging that Hertz and Texas South fraudulently misrepresented the purpose of the FSC, which was really a hidden profit stream, he has defeated the application of the voluntary payment defense as a matter of law. The trial court agreed with this argument. Appendix at p. 10.

Hertz and Texas South, on the other hand, argue that a mere allegation of fraud will not defeat the defense as a matter of law. They argue that to defeat the defense, Gomez will have to bring forward evidence of fraud, which includes proving that the purpose for the FSC and its calculation was "material" to the customers and that they relied on the alleged

20

misrepresentations.

Gomez cites *BMG* to support his argument. However, *BMG* did not hold that the mere allegation of fraud will defeat the voluntary payment defense. *See BMG Direct Mktg., Inc.*, 178 S.W.3d at 775. Rather, the supreme court noted that there was *no allegation* of fraud in *BMG. Id*. Not only is Gomez's argument contrary to *BMG*, it ignores several Texas cases that have held otherwise.

Texas courts have consistently held that once the voluntary payment defense is invoked, the plaintiff must plead and prove one of the exceptions to the defense to defeat its application. *See Spring Branch Bank v. Mengden,* 628 S.W.2d 130, 135-37 (Tex. App.–Houston [14th Dist.] 1981, writ ref'd n.r.e.); *Am. Cas. & Life Ins. Co. v. Boyd,* 394 S.W.2d 685, 689-91 (Tex. Civ. App.–Tyler 1965, no writ); *see also Gaither v. Lindsey*, 37 Tex. Civ. App. 149, 83 S.W. 225, 226 (Tex. Civ. App. 1904, no writ)**.** If the plaintiff alleges fraud, he or she must prove materiality and reliance as elements of the fraud in order to defeat the voluntary payment defense. *Gaither*, 83 S.W. at 226 ("If, however, appellant in any way represented himself to be a practicing physician, when he was not authorized to practice medicine, and appellee was thereby induced to employ and pay him for professional services, he could recover back the money so paid.").

Hertz and Texas South are correct that Gomez's fraud allegation will require him to prove the elements of materiality and reliance in order to defeat their voluntary payment defense. As we held above, fraud cannot be determined on a class-wide basis in this case, and individual issues will, therefore, predominate. Accordingly, the trial court abused its discretion in certifying Gomez's U.C.C. illegal penalty claims.

### 2. Breach of Contract Claim

To recover for breach of contract, a claimant must prove that: (1) there is a valid, enforceable contract between the parties; (2) the plaintiff performed as required under the contract; (3) the defendant breached the contract; and (4) the defendant's breach caused the claimant injury. *Exxon Mobil Corp.*, 221 S.W.3d at 853 (citing *Valero Mktg. & Supply Co. v. Kalama, Int'l*, 51 S.W.3d 345, 351 (Tex. App.–Houston [1st Dist.] 2001, no pet.)). The parties apparently disagree about the factual theory supporting this claim. Texas South characterizes this claim as follows: "As a result of the FSC being an illegal and unenforceable penalty under the Texas UCC, the stated daily rental rate was inflated in breach of contract." Texas South Appellant's Brief at p. 8. Hertz, on the other hand, asserts that the breach of contract claim is identical to Gomez's U.C.C. unconscionability claim. Hertz Corp. Appellant's Brief at p. 7.

However, neither of these interpretations is supported by Gomez's pleadings. *See Exxon Mobile Corp.*, 221 S.W.3d at 848-49 (rejecting Exxon's characterization of the plaintiffs' contract claims as disguised fraud claims). Rather, the pleadings demonstrate an entirely different factual theory based solely in general contract principles: Gomez alleges that a customer contracts to rent a car at a specific daily rate, but when the FSC is included, the rental rate is actually inflated, making the FSC a breach of the daily rate provision in the contract. This allegation does not depend on whether the FSC is a reasonable estimation of the harm suffered by Hertz and Texas South or on whether the charge is unconscionable. Rather, it requires a mere interpretation of the contractual terms.

22

In fact, the trial court recognized the claim as distinct from Gomez's U.C.C. claims in its certification order. In the certification order, the trial court found the following common issues:

(a)     Whether the FSC is unconscionable and therefore unenforceable;

(b)     Whether the FSC violates TX-UCC § 2A-504;

(c)     Whether the Defendants breached their contracts by charging the FSC;

(d)     Whether Defendants fraudulently misrepresented the FSC; and

(e)     Whether Plaintiff and members of the Plaintiff Class are entitled to damages, and if so, what is the proper measure of such damages.

Appendix at p. 5. The trial court clearly contemplated that Gomez's U.C.C. claims were distinct from his standard breach of contract claims.

This Court recently held that the voluntary payment defense does not apply to a simple breach of contract action. *Exxon Mobil Corp.,* 221 S.W.3d at 857; *see also BMG Direct Mktg., Inc.*, 178 S.W.3d at 775 ("It is true that, to the extent the subject matter of Peake's claims is covered by the parties' contract, the rule would not apply."). "The rule is a defense to claims asserting unjust enrichment, not to claims for breach of contract." *Exxon Mobil Corp.,* 221 S.W.3d at 857 (citing *BMG Direct Mktg.*, *Inc.* 178 S.W.3d at 775). As the supreme court explained, an adequate legal remedy prevents the application of unjust enrichment and the voluntary payment defense. *BMG Direct Mktg., Inc.*, 178 S.W.3d at 770 (citing *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000) for proposition that unjust enrichment does not apply when an express contract governs the dispute). Accordingly, the trial court did not abuse its discretion in determining that the voluntary payment defense would not apply to Gomez's breach of contract claim.

23

## C.    Unconscionability Claim

Gomez makes his unconscionability claim under U.C.C. 2A.108, which provides, in relevant part:

>    (a)    If the court as a matter of law finds a lease contract or any clause of a lease contract to have been unconscionable at the time it was made, the court may refuse to enforce the lease contract, or it may enforce the remainder of the lease contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

>    (b)    With respect to a consumer lease, if the court as a matter of law finds that a lease contract or any clause of a lease contract has been induced by unconscionable conduct or that unconscionable conduct has occurred in the collection of a claim arising from a lease contract, the court may grant appropriate relief.

TEX. BUS. & COMM. CODE ANN. § 2A.108.    Gomez alleged that the FSC is an unconscionable clause that takes advantage of the plaintiff class to a grossly unfair degree, adopting the standard definition of unconscionability recognized by Texas law.  *See id.* cmt. ("Subsections (1) and (3) of this section apply the concept of unconscionability reflected in the provisions of Section 2-302 to leases."); *id.* § 2.302 cmt. ("The basic test is whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract."); *see also Gallardo v. TCI Cablevision of Tex., Inc.*, No. 13-02-460-CV, 2004 WL 1932662, at *3 (Tex. App.–Corpus Christi Aug. 31, 2004, no pet.) (mem. op.) (defining unconscionability under U.C.C. as "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree."); *Peltier*, 51 S.W.3d at 623-64.

The trial court held that no individual issues would be involved in the analysis of this claim:

> Plaintiff's UCC and contract Class claims are based upon the standard, uniform written rental agreement signed by each Class member and the attendant FSC. If plaintiff has a UCC or contract cause of action against Hertz for over [sic] the FSC, then every member of the Class does. If Hertz violated the applicable law in charging its FSC as to one Class member, it violated it as to all–in exactly the same manner. The finite and straightforward nature of Plaintiff's contract claims thereby clearly demonstrates the feasibility and practicability of submitting this case to a single jury. Not only will common issues predominate [at] the trial of this case, there are no individualized questions left to submit to the trier of fact as to the contract claims. Neither individual intent, nor individual knowledge, nor individual reliance are elements of, or prerequisites to, Plaintiff's UCC and contract Class claims. The same is true as to the UCC claims, which will be determined by the Court as set forth in the Trial Plan.

Appendix at pp. 15-16 (citations omitted).

Hertz and Texas South appear to argue that Gomez's unconscionability claim under the U.C.C. is also barred by the voluntary payment defense, but they do not specifically brief whether this defense has ever been applied to an unconscionability claim. We have not located any Texas cases applying the defense in this manner. However, we need not decide this issue because the unconscionability claim, even in the absence of the voluntary payment defense, raises numerous individual issues that would cause the class mechanism to dissolve into a series of mini-trials.

"The predominance requirement prevents class certification when complex and diverse individual issues would overwhelm or confuse a jury or severely compromise a party's ability to present otherwise viable claims or defenses." *Stonebridge Life Ins. Co.*, 236 S.W.3d at 205. Texas courts have consistently held that unconscionability claims involve highly individualized inquiries that are not appropriate for resolution by a class action. *Wall v. Parkway Chevrolet, Inc.*, 176 S.W.3d 98, 106-08 (Tex. App.–Houston [1st

25

Dist.] 2004, no pet.) (concluding that individual issues would predominate because defendants must be able to inquire what purchasers would have done with concealed information); *Peltier*, 51 S.W.3d at 623-24 (concluding that individual questions of knowledge, ability, experience, and capacity would predominate).

As Hertz and Texas South point out, customers have varying degrees of knowledge, ability, experience, and capacity that would affect what they knew or cared to know about the FSC. Hertz and Texas South have a due process right to investigate these issues and present them at trial. *Stonebridge Life Ins. Co.*, 236 S.W.3d at 205; *Bernal*, 102 S.W.3d at 437. Certifying a class to prosecute an unconscionability claim would severely compromise this right and deny Hertz and Texas South their ability to defend against the claim. Accordingly, the trial court abused its discretion in determining that common issues would predominate with respect to the unconscionability claim.[9]

## IV. Rigorous Analysis and Trial Plan

Texas South and Hertz point to several infirmities in the trial plan that they assert require reversal and decertification. It is undisputed that Gomez did not rent from a Hertz corporate location. Instead, he rented from Texas South, a Hertz licensee. Hertz and Texas South argue, therefore, that in order to impose liability on Hertz, Gomez and other similar class members will have to establish some sort of agency or "vicarious liability" principal to establish Hertz's contractual liability. Texas South and Hertz attack nearly every class certification requirement based on the fact that Gomez rented from Texas

---

[9] Hertz and Texas South lodge several other arguments against a predominance finding in this case. First, Hertz and Texas South argue that Gomez's claims under the U.C.C. are defensive in nature and cannot provide a method for affirmative relief after a contract has been fully performed. Furthermore, Texas South argues that Gomez's U.C.C. claims require a determination that each plaintiff qualifies as a consumer, raising numerous individual issues. Given our disposition, we need not decide these issues and express no opinion as to these arguments. *See* TEX. R. APP. P. 47.1.

26

South and not directly from Hertz.

Hertz and Texas South both focus their arguments on whether Gomez's claims are typical of the class members' claims, and Texas South further argues that common issues will not predominate due to Gomez's unique position in relation to the class. Texas South argues that the trial plan fails to adequately distinguish between Hertz and Texas South and does not explain how the claims will proceed against each defendant, which is particularly egregious given the problems with Gomez's representation of the class. Texas South further argues that Gomez did not put on any evidence demonstrating that he has a viable claim against Texas South because all the evidence presented to the trial court related to FSCs charged by Hertz corporate locations.

Second, Texas South argues that Gomez did not join Texas South as a defendant until September 15, 2004, yet the trial court certified a class of consumers that were charged an FSC after February 6, 2000. According to Texas South, the four-year statute of limitations applicable to this case would bar any claims by class members charged an FSC between February 6, 2000 and September 15, 2000. Texas South argues that this time period accounts for 18.85% of all Texas South's rentals to class members. It argues that the trial court did not address this defense in its trial plan. We agree with both arguments.

## A.    Trial Plan Requirement

In *Southwestern Refining Co. v. Bernal*, the Texas Supreme Court explained that it "is improper to certify a class without knowing how the claims can and will likely be tried." 22 S.W.3d at 435. Thus, the supreme court imposed a "trial plan" requirement: "A trial court's certification order *must* indicate how the claims will likely be tried so that

conformance with Rule 42 may be meaningfully evaluated." *Id.* The court admonished trial courts not to rely on the mere assurances of counsel that any problems with rule 42's requirements can be overcome—rather, the trial court must go beyond the pleadings, understand the claims and defenses, relevant facts, and substantive law in order to determine the certification issues. *Id.*

**B.      Problems with Gomez's Representation of the Class**

Because we have held that individual issues will predominate with respect to Gomez's fraud and U.C.C. claims, the only remaining claim is Gomez's breach of contract claim. Gomez pleaded apparent authority, agency by estoppel, ratification, vice-principal, joint enterprise, conspiracy, and partnership theories in an attempt to establish a claim against Hertz directly. Hertz and Texas South argue that each of these theories will require an individual analysis that will subsume the litigation.

The trial court's order does not analyze the specific elements of each of these theories. In fact, the trial court's discussion of predominance does not mention these issues at all. In discussing typicality, however, the trial court seems to suggest that these issues could be handled on a class-wide basis:

> The fact that Plaintiff will be required to establish corporate liability upon the theories pled does not, as Hertz argues, create a 'unique hurdle' that impermissibly distinguishes Plaintiff from those who rented from a corporate location. There is no conflict between Plaintiff and these corporate renters going to the very subject matter of the lawsuit, if there is any conflict at all. Everyone in the Class was charged an FSC in Texas after February 6, 2000, whether they rented from a licensee or from a corporate location.

Appendix at p. 8. The trial court's order failed to rigorously analyze the predominance requirement by failing to address the elements of proof required for these liability theories and by failing to set out in detail how each element can be managed efficiently on a class-

28

wide basis. *Stonebridge Life Ins. Co.*, 236 S.W.3d at 205; *Henry Schein, Inc.*, 102 S.W.3d at 694; *Bernal,* 22 S.W.3d at 434.

For example, apparent authority "may arise either from a principal knowingly permitting an agent to hold herself out as having authority or by a principal's actions which lack such ordinary care as to clothe an agent with the indicia of authority, thus leading a reasonably prudent person to believe that the agent has the authority she purports to exercise." *Gibson v. Bostick Roofing and Sheet Metal Co.,* 148 S.W.3d 482, 491 (Tex. App.–El Paso 2004, no pet.) (citing *Ames v. Great S. Bank*, 672 S.W.2d 447, 450 (Tex. 1984)); *see Patel v. Kuciemba*, 82 S.W.3d 589, 596 (Tex. App.–Corpus Christi 2002, pet. denied). Apparent authority is an estoppel principle—that is, it is based on a representation by the principal that causes justifiable reliance and resulting harm. *Baptist Mem'l Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 948 & n.2 (Tex. 1998); *Wyndham Hotel Co. v. Self,* 893 S.W.2d 630, 634 (Tex. App.–Corpus Christi 1994, writ denied) (providing that party's justifiable, detrimental reliance on representation of authority is element of apparent authority); *Ybanez v. Anchor Constructors, Inc.*, 489 S.W.2d 730, 735 (Tex. Civ. App.–Corpus Christi 1972, writ ref'd n.r.e.) ("The doctrine of apparent authority does not apply if the third person . . . who, by dealing with the agent . . . , was not mislead to such an extent that he has been induced to change his position to his detriment."). The trial court did not analyze whether reliance, under these circumstances, could be established on a class-wide basis, nor did it discuss how such issues could be handled at trial.

In *State Farm v. Lopez*, the supreme court addressed arguments similar to those advanced by Texas South. 156 S.W.3d at 556. In that case, a class of State Farm policyholders in Texas was certified to prosecute claims for fraud, malicious suppression

29

of dividends, breach of fiduciary duty, and misrepresentation. *Id.* at 552. The trial court did not include a trial plan in its order certifying the class, and on appeal, the court of appeals held that because predominance and superiority of the class vehicle were not challenged, a trial plan was not required. *Id.* at 553.

The Texas Supreme Court held that *Bernal*'s trial plan requirement was not limited to an analysis of predominance and superiority. *Id.* at 555. Rather, the court held that "[r]equiring a certification order to contain a trial plan allows a reviewing court to meaningfully evaluate whether certification of the class conforms with *all* Rule 42 prerequisites." *Id.*

State Farm argued that Illinois law applied to bar the class representatives' claims, and because the class representatives had no viable claims, the class representatives' claims were not typical of the class. *Id.* State Farm also argued that the class representatives were inadequate to represent the class. *Id.* at 555. It reasoned that current policyholders, like the class representatives, could potentially have an interest in seeking less damages against State Farm to ensure that funds would be available to pay policy claims, whereas former policyholders would not have such an interest. *Id.* at 556. Furthermore, State Farm argued that the trial court did not consider how to protect the interests of policyholders outside of Texas or the application of Illinois law. *Id.* at 556.

The supreme court agreed and decertified the class. *Id.* It held that because the trial court did not (1) identify the specific causes of action to be decided in this case, or (2) indicate how the claims would be tried or the substantive issues that would control the litigation, it could not meaningfully evaluate the challenged requirements for certifying the class. *Id.* at 556-57.

30

Here, the trial plan is entirely devoid of any discussion of how the claims against Texas South and Hertz will proceed, given that Gomez did not rent directly from Hertz. Without such an analysis, it is difficult, if not impossible, for us to determine if the class should have been certified. *Id.* We can surmise that the trial court's failure to include any discussion of these issues in the trial plan is a result of its failure to rigorously analyze the agency principles in light of the predominance requirement, as we held above. It may be that sub-classes should be formed, and a class representative may need to be appointed to represent a subclass of plaintiffs who rented directly from Hertz. The trial court did not explore any of these alternatives. Additionally, the trial court did not analyze how it would handle Texas South's limitations defense. This may be dealt with easily if the trial court chooses to divide the class into subclasses. Again, the trial court did not consider this option.

The trial court held that "[b]ecause all issues in this case are common, the trial plan can be relatively simple, and would require only one jury and one trial." As is apparent from our discussion above, this holding was incorrect, and the landscape of this case has been significantly altered through our discussion of Hertz and Texas South's complaints. Accordingly, we decertify the class breach of contract claims against Hertz and Texas South without prejudice. On remand, the trial court must consider the issues we outlined above and must complete a thorough trial plan that (1) examines the agency theories above in detail; (2) identifies common issues and examines whether those issues will predominate; (3) examines the possibility of subclasses with separate class representatives, or explains how Gomez, if he remains the only class representative, could efficiently prove his claims against Hertz and Texas South in light of the pleaded agency

31

principles.

## V.  Conclusion

For all the foregoing reasons, we decertify the class and remand to the trial court for proceedings consistent with this opinion.

_____
GINA M. BENAVIDES,
Justice

Opinion delivered and filed
this the 17th day of July, 2008.