**Ilaben M. PATEL, Individually, Manila Corporation, and DAS Investments Corporation, Appellants,**

v.

**Anthony Richard KUCIEMBA and Dorothy Kuciemba, Appellees.**

No. 13–00–647–CV.

Court of Appeals of Texas, Corpus Christi.

May 23, 2002.

Rehearing Overruled Aug. 22, 2002.

Charles Coussons, Michael C. Eddings, Pamela E. George, Houston, for appellants.

Kent M. Hanszen, Thomas H. Scott, Houston, for appellees.

Before: Justices HINOJOSA, CASTILLO, and AMIDEI [1].

## OPINION

MAURICE AMIDEI, Justice (Assigned).

This is an appeal from an adverse jury verdict and judgment in a cause of action by appellees Anthony Richard Kuciemba "(Tony)" and Dorothy Kuciemba "(Dorothy)" against appellant Ilaben M. Patel "(Ilaben)", individually on four promissory notes, and against appellants Manila Corporation "(Manila)" and DAS Investment Corporation (DAS) for fraudulent transfer of real estate.

Ilaben, as Independent Executrix of the Estate of Manubhai G. Patel "(Manu)", deceased, Kailash Patel, Manu Enterprises, Inc. and HMI Enterprises, Inc., defendants in the trial court did not appeal.

The jury found in favor of appellees on all questions. Ilaben only contests the findings in questions 6 and 7 which found Manu had apparent authority to sign the notes as Ilaben's agent, and that Ilaben ratified Manu's execution of the notes. Manila and DAS contest question 10 which finds DAS made a fraudulent transfer to Manila. Ilaben also claims the trial court erred in admitting an alleged Dunn & Bradstreet report which was inflammatory and prejudicial.

### Standard of Review

■ No evidence points of error must and may only be sustained when the record discloses: (1) a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more

---

**1.** Former Justice Maurice Amidei assigned to this Court by this Chief Justice of the Su-

preme Court of Texas pursuant to Tex.Gov't Code Ann. § 74.003 (Vernon 1998).

than a mere scintilla; and (4) the evidence established conclusively the opposite of the vital fact. *Juliette Fowler Homes, Inc. v. Welch Assocs.*, 793 S.W.2d 660, 666, n. 9 (Tex.1990).

▮▮▮ Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and in case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context. TEX.R.EVID. 103(a)(1). Where it is proven that publications of market prices or statistical compilations are generally recognized as reliable and regularly used in a trade or specialized activity by persons so engaged, such publications are admissible for the truth of the matter published. TEX.R.EVID. 803(17); *Curran v. Unis*, 711 S.W.2d 290, 296–97 (Tex.App.—Dallas 1986, no writ).

### Factual Background

Manu owned and operated five convenience stores until March, 1997 when he was killed. In the beginning Manu leased a convenience store at 13745 Chrisman Road, Houston, Texas, for about five years until September 1990 when the owners, Tony and Emrik Nowak sold the store to DAS. DAS is a corporation owned by a general partnership consisting of Ilaben and Kailash Patel, the general partners. The purchase price balance was evidenced by a note and secured by a deed of trust lien executed by DAS. The payments were made on the deed of trust note until Manu's death. The deed of trust was posted for foreclosure. Prior to the foreclosure, DAS conveyed the real estate to Manila by a deed wherein Manila agreed to assume the existing deed of trust lien indebtedness. However, the real estate note was paid in full by DAS prior to a foreclosure sale. DAS paid Tony and Emrik Nowak the purchase money from Manila for their release of the deed of trust lien.

In addition to the real estate note discussed above there were four promissory notes signed and executed by Manu on the dates and for the amounts as follows:

1. Note # 1: October 1, 1990    $35,000    Plaintiffs' Exhibit # 1

2. Note # 2: November 15, 1992    60,000    Plaintiffs' Exhibit # 3

3. Note # 3: April 19, 1994    20,000    Plaintiffs' Exhibit # 4

4. Note # 4:[2] September 1, 1996    50,000    Plaintiffs' Exhibit # 7

Manu and Ilaben were married at all relevant times but Ilaben did not sign any of the notes and did not have any knowledge that Manu had signed the notes. Tony agreed that Manu only pay interest on the notes. The interest on the notes was 12 percent. By agreement the interest payments on the notes were consolidated so that Manu made only one interest payment each month in the amount of

---

**2.** This note was jointly signed by Manu Enterprises, Inc. and apparently the parties attempted to place a lien on the real estate at 13745 Chrisman, as well as on gasoline equipment, working cooler, shelving, counter etc II by a UCC–1 Financing Statement signed by Manu for Manu Enterprises, Inc. and the Kuciembas. However, the UCC–1 statement was undated and was not filed in the county clerk's office and the Secretary of State's office until April 1999, and DAS owned the real estate at 13745 Chrisman not Manu Enterprises, Inc. It is not clear that the UCC–1 statement is connected with Note # 4 or any other note.

$1,650 on all four notes until his death in March 1997. Ilaben continued the $1,650 monthly payments until December 1997. At that time, Ilaben denied the debts and wanted proof of their validity. Appellees filed suit on the notes and sought to null and void the deed from DAS to Manila on the grounds it was a fraudulent transfer.

## Issues Presented

Ilaben contends in issue number one that the trial court erred in entering judgment against her because there was neither legally nor factually sufficient evidence to support the jury findings of apparent authority and ratification.

Ilaben objected to the charge on the ground there was legally and factually insufficient evidence of apparent authority and ratification to support jury questions numbers 6 and 7, and repeated such objections in her motion for new trial.

The conclusions and arguments by appellees as to evidence to support the jury findings that Manu had apparent authority to sign the notes as agent for Ilaben and our response thereto are as follows:

1. The fact that Manu and Ilaben were married. We disagree. As a matter of law, this cannot be evidence of apparent authority because a spouse does not act as an agent for the other spouse solely because of the marriage relationship. *See Nelson v. Citizens Bank & Trust*, 881 S.W.2d 128, 131 (Tex.App.—Houston [1st Dist.] 1994, no writ); *Carr v. Houston Bus. Forms, Inc.*, 794 S.W.2d 849, 852 (Tex.App.—Houston [14th Dist.] 1990, no writ). At the time the four notes were made, appellees were charged with knowledge that the marital relationship alone is insufficient evidence that a spouse acts as agent for the other spouse because section 4.031(c) [now section 3.201(c)] of the Texas Family Code specifically provided that a spouse does not act as an agent

for the other spouse solely because of the marriage relationship. TEX.FAM.CODE ANN. § 3.201(c). The case *Cockerham v. Cockerham*, 527 S.W.2d 162 (Tex.1975), cited by appellees to support the findings of agency and ratification, is distinguishable because in that case the husband and wife were both clearly active in the wife's dress shop, whereas in this case Ilaben did not have an actual involvement in Manu's businesses other than operating two of the convenience stores which did not include decisions or knowledge of Manu's business borrowing. Also, *Cockerham* was decided prior to the enactment of section 4.031(a) [now section 3.201(a)(1)] of the Texas Family Code which provided as follows:

(a) A person is personally liable for the acts of the person's spouse only if:

(1) the spouse acts as the agent for the person; . . . .

TEX.FAM.CODE ANN. § 3.201(a)(1).

Other cases have distinguished *Cockerham* in a similar fashion before and after section 4.031(a) was enacted in 1987; *Nelson*, 881 S.W.2d at 131; *Pope Photo Records, Inc. v. Malone*, 539 S.W.2d 224, 227 (Tex.Civ.App.—Amarillo 1976, no writ).

2. The two checks on the Patels' joint account used to secure two of the notes. We disagree. The checks were signed by Manu but were not signed by Ilaben; the checks were never cashed; and there was no proof that Ilaben had any knowledge of the checks. Apparent authority in Texas is based on estoppel. *Ames v. Great S. Bank*, 672 S.W.2d 447, 450 (Tex.1984). "It may arise either from a principal knowingly permitting an agent to hold himself out as having authority or by a principal's actions which lack such ordinary care as to clothe an agent with the indicia of authority, thus leading a reasonably prudent person to believe that the agent has the authority he purports to

exercise." *Id.* "A prerequisite to a proper finding of apparent authority is evidence of conduct by the principal relied upon by the party asserting the estoppel defense which would lead a reasonably prudent person to believe an agent had authority to so act." *Id.* There was no evidence that Ilaben intentionally and knowingly permitted Manu to use the two checks as he did, or by any want of due care by Ilaben which led Tony to believe Manu had authority to sign the checks as her agent. A reasonably prudent person would not have believed Manu had authority to act as Ilaben's agent as claimed merely because checks with both Manu's and Ilaben's names were printed thereon when Ilaben had not signed the checks. Manu's conduct in using the checks as he did is not evidence of apparent authority to act as Ilaben's agent. "A court may consider only the conduct of the principal leading a third party to believe the agent has authority in determining whether an agent has apparent authority." *Sociedad De Solaridad Social El Estillero v. J.S. McManus Produce Co.,* 964 S.W.2d 332, 334 (Tex.App.—Corpus Christi 1998, no pet.). The two checks cannot be evidence to support jury question number six regarding apparent authority.

■ 3. Ilaben was involved in all of Manu's stores throughout the years. We disagree. There is no evidence to support this conclusion. The evidence showed Ilaben only operated two stores, the Wallisville and W. Hardy locations; that she only performed such duties as cashing checks, accounting, accounts receivable and accounts payable; and that she did not discuss or even know of decisions Manu made on investments, borrowing money or running the business. There was no evidence that Ilaben "allowed" Manu to make such decisions but she lived with and stood by his decisions. Ilaben never participated in making loans for money to run the two stores where she worked, although some of the money from the loans in question was used at those stores. Merely operating the two stores as she did could not have led a reasonably prudent person to believe that Manu had apparent authority to sign the notes in question as Ilaben's agent. Even if Ilaben knew of the loans Manu made, one would not infer that she consented to the loans. *See Spruill v. Spruill,* 624 S.W.2d 694, 698 (Tex.App.—El Paso 1981, writ dism'd w.o.j.).

■ Community property over which a spouse has the sole management, control and disposition is known as special community property. *Moss v. Gibbs,* 370 S.W.2d 452, 455 (Tex.1963). Special community property is that portion of the community that is under one spouse's exclusive control and is not liable for the other spouse's debts. *Id.; see also* 39 TEX.JUR.3D *Family Law* § 190 (1994). Manu had the sole management, control and disposition of the convenience store business and it was his special community property.

■ 4. The statement by Manu to Tony not to worry about the money he loaned to Manu because if anything happened to him, then Ilaben would repay all of the loans with his life insurance proceeds. We disagree. The statement was made by Manu, not Ilaben, and cannot be evidence of apparent authority of Manu to sign the notes in question as Ilaben's agent. *See Ames,* 672 S.W.2d at 450. Even if Manu made the statement, he could not bind Ilaben because any insurance proceeds the wife receives at her husband's death are her separate property not subject to her husband's debts unless the proceeds have been assigned as collateral security therefor. *Pope Photo Records,* 539 S.W.2d at 226. There is nothing in the record showing that the proceeds of a life insurance policy on Manu's life was

assigned either as collateral security of the note in question, or otherwise assigned to the appellees. To the contrary, Tony believed Ilaben would first receive the insurance proceeds from the insurance company, and then pay him out of the proceeds. No mention was made of an assignment.

5. Appellees' allegation that Ilaben stop paying interest on the notes when Tony retained an attorney, and then admitted to Mr. Nowak she owed the Kuciembas the money when she stated that she did not have the money now but would pay later. We disagree. The evidence shows that Ilaben did not admit owing the money. Ilaben did not tell Mr. Nowak she owed the money but instead she told him she was not going to pay Tony until after they went to court and Tony proved the debts. In effect, Ilaben's statements were a denial of the debts rather than an admission of their validity. In any event, Ilaben's statements made subsequent to the execution of the notes cannot be evidence of apparent authority in Manu to act for Ilaben. Appellees had the burden to prove Tony relied upon Ilaben's conduct when he made the loans. *Ames,* 672 S.W.2d at 450. These alleged statements by Ilaben were made years after the notes were made and it would not have been possible for Tony to rely on them.

6. The Kuciembas believed Manu had the authority to bind Ilaben. We disagree. Since Ilaben did nothing to lead Tony to believe Manu had authority to sign the note as her agent, the Kuciembas' beliefs are not evidence of apparent authority. *Id.* Further, appellees cite no authority to support this conclusion.

The conclusions and arguments made by appellees as to evidence they claim support the jury finding that Ilaben ratified the notes and our response thereto are as follows:

7. Ilaben allegedly "allowed" her husband to control all of the family finances and business finances. We disagree. As discussed in paragraph number three above, Ilaben did not allow her husband to control the finances, and the control her husband exercised was not pursuant to their agreement. Manu made the financial decisions without her knowledge or consent. Unless there is evidence of full knowledge by the principal of the agent's unauthorized act, or alternatively, unless there is full evidence of facts from which such knowledge can reasonably be imputed to the principal, the evidence as to ratification is insufficient. *Wyatt v. McGregor,* 855 S.W.2d 5, 13 (Tex.App.— Corpus Christi 1993, writ denied). As discussed in above paragraph number one the debt of Manu is not imputed to Ilaben. There is no evidence of facts from which full knowledge of the notes could be imputed to Ilaben because of the extent of control Manu exercised over the family and business finances.

8. Two of the loans were secured by personal checks on Ilaben's joint personal account. We disagree. Inasmuch as Ilaben had no knowledge of these checks, they cannot be evidence of ratification. *Id.*

9. Ilaben allegedly stated that she was not paying the Kuciembas because they retained attorneys, while not denying she owed the money. We disagree. As discussed in above paragraph number 5, Ilaben in effect denied the notes, but the fact she ceased paying because the Kuciembas retained attorneys is not evidence of ratification. Ilaben desired that the Kuciembas' claim be proven in court, but her statements did not indicate she had full knowledge of the notes. Appellees did not meet their burden to prove Ilaben had full knowledge of all material facts at the time she stopped paying, and stated she

wanted the Kuciembas' claim to be proven in court. *Jackson v. Gray*, 558 S.W.2d 138, 139 (Tex.Civ.App.—Tyler 1977, writ ref'd n.r.e.).

10. Mr. Nowak, another individual who loaned the Patels money, understood that Mrs. Ilaben owed the Kuciembas the money. We disagree. The money Mr. Nowak understood Ilaben owed was on the Chrisman property note which had been paid. In any event, whatever Mr. Nowak "understood" about a paid note on which he was a joint payee is not relevant to whether Ilaben ratified the notes in question.

11. Ilaben allegedly admitted to Mr. Nowak that she owed the Kuciembas. We disagree. As discussed in above paragraph number 5, Ilaben did not admit she owed the note in question. Ilaben's statements to Mr Nowak as cited by appellees do not constitute evidence of apparent authority or ratification.

12. Tony demanded payment of the principal for all four notes from Ilaben so she knew what she was ratifying by paying the interest. We disagree. During the time interest payments were made after Manu's death, appellees did not prove Ilaben had full knowledge of all the material facts concerning the four loans, and the checks paying the interest were from Manu Enterprises, a corporation which is a part of Manu's estate, and Manu's estate. Ilaben was independent executrix of Manu's estate and properly could make payments for the estate, but she was not personally linked to the four notes by the payments of interest. *Frazier v. Wynn*, 472 S.W.2d 750, 753 (Tex.1971). The cash payments were made to Tony when he would show up at a store where Ilaben was working until she told him to stop. The source of the cash which was paid was not proven.

13. Ilaben retained the benefits of the loans through the inventory and equipment the money purchased as well as the continued recycling of the money for her check cashing business (an implied ratification). We disagree. Appellees did not prove any remaining benefits such as inventory, equipment, and money for cashing checks from the loans in question. Manu used the borrowed money for a number of years before he died. The bookkeeper testified the name Kuciemba did not appear in the Patel records. Even if there were benefits from the loans when made, there was nothing to give Ilaben notice she was retaining any benefits from the loans, or that she had full knowledge of all the material facts. *Id.* Before she could be held to have voluntarily assented to the loans, the Kuciembas were required to prove Ilaben knew the terms of the notes. *Taylor v. Gilbert Gertner Enters.*, 466 S.W.2d 337, 340 (Tex.Civ.App.—Houston [1st Dist.] 1971, writ ref'd n.r.e.).

The trial court erred in submitting jury questions 6 and 7, and in rendering judgment against Ilaben, individually, based on the jury's answers thereto because there was no evidence that Manu acted as Ilaben's agent in executing the promissory notes under apparent authority or that Ilaben ratified the promissory notes. *Juliette Fowler Homes, Inc.*, 793 S.W.2d at 666, n. 9. Ilaben's issue number one is granted.

DAS contends in issue number two that the trial court erred in submitting the incorrect name of DAS Investments, a non-party to the suit, in jury question number 10, instead of DAS Investment Corporation, the correct party. Although DAS argues that this constituted fundamental error, it cites no authority to support its argument. Even assuming fundamental error, it is unnecessary to rule on this issue because of our ruling on issue

number three that there was no fraudulent transfer and therefore we cannot affirm a judgment against DAS or DAS Investments. Issue number two is overruled.

DAS and Manila assert in issue number three that the evidence is legally and factually insufficient to sustain a judgment against them and to "null" and "void" the deed to Manila.

Tony and Nowak held a deed of trust lien on the real estate owned by DAS at 13745 Chrisman. Payments were made on this deed of trust note until Manu's death. The deed of trust was posted for foreclosure. Prior to foreclosure DAS conveyed the real estate to Manila by a deed wherein Manila agreed to assume the existing $60,000 deed of trust indebtedness. However, the deed of trust note was paid in full by DAS prior to a foreclosure sale. DAS paid Tony and Nowak the purchase money from Manila to pay the balance on the deed of trust note and received from them a release of the deed of trust note and lien. Appellees claim the transfer was fraudulent because the property was sold well below the market value of the property with a substantial gain to Manila, an insider.

■ The judgment of the trial court orders the transfer null and void as to plaintiffs but did not award them any amount of money for the value of the asset transferred or the amount necessary to satisfy their claim, which in this case was the same. If the transfer was voidable the trial court could have only rendered judgment against Manila or DAS for the amount of the claim, to-wit: $60,000, notwithstanding the value of the property may have been greater than $60,000 as claimed by appellees. To the extent a transfer is voidable in an action by a creditor, the creditor may recover judgment for the value of the asset transferred or the amount necessary to satisfy the creditor's claim, whichever is less. TEX.BUS. & COM. CODE ANN. § 24.009(b) (Vernon Supp.2002); *Jackson Law Office, P.C. v. Chappell*, 37 S.W.3d 15, 27 (Tex.App.—Tyler 2000, pet. denied). However, since the $60,000 was paid simultaneously with the transfer and with the consent of the creditors, the appellees, their claim was satisfied, and the transfer was not fraudulent.

■ In seeking the equitable remedy offered by the Uniform Fraudulent Transfer Act, appellees were required to come into court with clean hands as equity will compel fair dealing, disregard all forms and subterfuges, and look only to the substance of things. *Chappell*, 37 S.W.3d at 27. DAS and Manila need not show they suffered injury in order for the court to apply the doctrine of unclean hands to deny appellees equitable relief. *Id.* Appellees' fraudulent transfer claim in effect is groundless because the debtor's debt had been paid in full and released. While DAS and Manila have not proved any specific injury, they have incurred the time and expense of litigation, and the title to the real estate at 13745 Chrisman has been clouded by appellees' suit. We apply the unclean hands doctrine to deny equitable relief to appellees.

DAS's and Manila's issue number three is granted.

■ Ilaben's issue number four complains that the trial court committed prejudicial error in admitting an alleged Dunn and Bradstreet Report without proper predicate. It appears Ilaben's argument is correct because it has been held that a proper predicate must be made before a Dunn & Bradstreet Report is admissible as an exception to the hearsay rule. *Curran*, 711 S.W.2d at 297. The improper admission of this report probably caused the rendition of an improper verdict because there was no other evidence to sup-

port jury questions 6 and 7. Tᴇx.R.Aᴘᴘ.P. 44.1(a)(1).

Ilaben's issue number four is granted.

The trial court judgment: (1) against Ilaben, individually, is reversed and judgment is rendered that appellees take nothing against Ilaben, individually; (2) the judgment against DAS and Manila holding they made a fraudulent transfer is reversed and judgment is rendered that said transfer from DAS to Manila is not a fraudulent transfer; and (3) the judgment against the Estate of Manubhai G. Patel, and Manu Enterprises, Inc. is affirmed.