**REMITTITUR SUGGESTED, MODIFY and AFFIRM; Opinion Filed April 13, 2016.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-15-00528-CV

### LINDA FITZERMAN, Appellant
### V.
### CLASSIC AMERICANA, LLC, Appellee

### On Appeal from the 68th Judicial District Court
### Dallas County, Texas
### Trial Court Cause No. DC-14-12166

## MEMORANDUM OPINION

Before Justices Francis, Lang-Miers, and Myers
Opinion by Justice Myers

This is a dispute between a limited liability company and the wife of its former manager and officer. The trial court granted appellee Classic Americana LLC's motion for partial summary judgment on its claims for breach of fiduciary duty, fraud, unjust enrichment, and conspiracy against appellant Linda Fitzerman and her husband Todd Boone Fitzerman.[1] The case then proceeded to trial on the issue of damages. The trial court rendered judgment on the jury's verdict in favor of Classic Americana. In seven issues, Linda challenges the trial court's summary judgment ruling, the admission and exclusion of evidence at trial, the jury instructions, the sufficiency of the evidence to support the jury's verdict, and the awards of actual and exemplary damages. For the reasons that follow, we sustain Linda's challenge to the sufficiency

---

[1] For clarity we refer to the Fitzermans as "Todd" and "Linda."

of the evidence to support a portion of the actual damages awarded and suggest remittitur. We overrule all other issues.

## BACKGROUND

Classic Americana is an automobile dealership formed in December 2007. Todd was Classic Americana's manager, president, secretary, and treasurer from Classic Americana's inception. Stephen Perkins, a member of Classic Americana, received a telephone call in January 2010 from one of Classic Americana's lenders. The lender expressed concerns about Classic Americana's line of credit and related collateral. The members of Classic Americana investigated, determined there were significant missing funds, and removed Todd from all positions he held. Initially the parties agreed to perform an audit to determine any amounts owed by either party to the other. But neither Todd nor Linda complied with the terms of the agreement, and Classic Americana retained CFO Partners to conduct a forensic investigation. Jules Ellis, a certified public accountant employed by CFO Partners, conducted the investigation and determined, among other findings, that

- Todd did not comply with financial reporting requirements of Classic Americana's company agreement;

- In 2009, Todd wrote and signed 67 checks from Classic Americana's bank accounts made payable to himself totaling $116,650.00, including multiple checks for different amounts on the same day. There were no documents to support any business purpose for these checks;

- Between 2008 and 2010, Todd wrote and signed 16 checks from Classic Americana's bank accounts made payable to "cash" or used to purchase unexplained cashier's checks. These transactions totaled $148,691.54. There were no documents to support any business purpose for these checks;

- In 2008, there were twenty checks written for petty cash totaling $4,522.67 from Classic Americana's bank account, with no documents to support a business purpose for the checks;

- Between December 2008 and December 2009, there were 320 checks totaling $1,728,493.33 returned by three different banks for nonsufficient funds. Classic Americana incurred $5,435.00 in bank fees related to these transactions;

- A warrant for Todd's arrest was issued in September 2009 as a result of multiple checks not paid due to insufficient funds;

- In at least seventeen instances, cars were misrepresented as valid and current assets of Classic Americana to be used as collateral against a line of credit with Texas Star Bank. The proceeds from the sale of these collateralized vehicles were collected but not deposited in a company bank account and not used to repay the related loans to the bank. The total debt of $399,100.00 owed to the bank for these seventeen vehicles was paid by Perkins from his personal funds;

- Although Todd did not have authority from Classic Americana to approve or pay any expense exceeding $20,000, he signed 121 checks totaling $4,024,163.64 that were each $20,000 or greater. Ten of the 121 checks, totaling $281,195.77, were written to Linda;

- A total of $57,322.66 in unexplained expenses was paid using Classic Americana's funds between February 2008 and December 2009. These expenses appeared to be Todd's personal expenses, such as college tuition for Todd's son Brad, leisure travel, and expenses incurred at high-end clothing stores. There were no documents to support a business purpose for these expenses;

- Seven checks totaling $24,431.00 were written on Classic Americana accounts to Todd's son Brad, and two checks totaling $4,700.00 were written on Classic Americana accounts to Todd's daughter Pamela. Neither Brad nor Pamela was employed by the company or was a documented contractor of the company for any purpose. There were no documents to support a business purpose for these payments;

- There were numerous unexplained transactions involving use of company funds by both Brad and Linda;

- Linda was not employed by Classic Americana and was not a documented contractor of the company for any purpose. Thirty-seven checks and wire transfers totaling $519,786.56 of company funds were written directly to Linda or paid expenses for her benefit between April 2009 and January 2010;

- Multiple Classic Americana credit cards were charged for approximately 190 transactions totaling more than $60,000 for which there was no documented business purpose. One of the cards was opened jointly for Classic Americana and for Ethel Fitzerman, Todd's mother, who was not employed by the company and was not a member, manager, vendor, or contractor of the company;

- Over $60,000 relating to sales of two vehicles was missing;

- After Linda had been reimbursed by the company for charges made on her credit cards, she reported the transactions as fraudulent, resulting in the levy of $35,909.96 in credit card chargebacks against Classic Americana;

- Todd was responsible for ensuring that Classic Americana complied with state and federal laws. The audit revealed at least 24 compliance violations; and

- Between January 2010 and January 2013, Perkins paid over $1.5 million from personal funds to satisfy the debts and operating expenses of Classic Americana.

Classic Americana filed suit against Todd and Linda on February 15, 2013. Classic Americana then sought partial summary judgment, as to liability but not damages, on its claims for breach of fiduciary duty, conspiracy, common law fraud, and unjust enrichment. The trial court granted Classic Americana's motion. Todd then filed a petition for relief in bankruptcy court. The trial court severed Classic Americana's claims against Linda, and the severed cause proceeded to a jury trial on the remaining issue of damages. The jury awarded Classic Americana $2,980,392.60 on its cause of action for fraud; $1,500,000 in exemplary damages for fraud; and $519,607.40 for unjust enrichment. Classic Americana elected to recover on the jury's fraud verdict, and the trial court rendered judgment accordingly. Linda's motion for new trial was overruled by operation of law. This appeal followed.

## DISCUSSION

### A. Summary Judgment

In her first issue Linda contends the trial court erred by granting summary judgment. She argues there were genuine issues of material fact as to her "responsibility for the purported wrong-doings of Todd and as to whether she committed the alleged wrongs." We review this complaint de novo. *McMahon Contracting, L.P. v. City of Carrollton*, 277 S.W.3d 458, 467 (Tex. App.—Dallas 2009, pet. denied).

Classic Americana bore the burden to establish that there were no genuine issues of material fact and that it was entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c); *Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 511 (Tex. 2014). Classic Americana's motion for summary judgment was comprehensive. It provided a statement of facts

–4–

supported by affidavits, the forensic investigation report, and other exhibits. It enumerated each of the elements of its causes of action for fraud, civil conspiracy, breach of fiduciary duty, and unjust enrichment, citing applicable authority, and explained how its summary judgment evidence established each element. It specified that it sought summary judgment as to liability only, but cited evidence that it had suffered specific damages as a result of Todd and Linda's conduct.

Specifically as to Linda, the motion for summary judgment alleged that Linda and Todd conspired to defraud Classic Americana. Classic Americana cited the elements of conspiracy: two or more persons; an object to be accomplished; a meeting of the minds on the object or course of action; one or more unlawful acts; and damages as a proximate result, citing *Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005). Classic Americana then argued that:

- Todd and Linda were the two persons who conspired to defraud it;

- Todd and Linda had the objective of defrauding Classic Americana into paying their personal expenses through Todd's use of Linda's credit card "to pay for both business expenses and for their personal expenses under the guise of reimbursement of only legitimate company expenses";

- a meeting of the minds could be inferred by evidence that Todd and Linda acted in concert, citing proof that Linda received over $500,000 worth of checks from Classic Americana issued at Todd's request. Evidence from the forensic investigation showed that Todd and Linda used company funds to pay for expenses such as personal travel, meals, and Todd's son's tuition;

- Linda took overt actions in furtherance of the conspiracy by allowing Todd to use her personal credit card for company purposes, accepting and depositing checks from Classic Americana into her personal checking account, and paying personal creditors with company funds.

Classic Americana also set forth the legal elements and factual bases for its fraud claim against Linda and Todd, again relying on evidence from the forensic investigation. Classic Americana argued that Todd and Linda made false material representations to it "every time a personal bill was presented to Plaintiff for reimbursement, every time a company credit card was

–5–

used for non-business related purposes, and every time a check or wire transfer was received by a Defendant for non-business purposes." Classic Americana argued that intent and knowledge of falsity were established because Linda and Todd were the only persons using Linda's credit cards and submitting the charges to Classic Americana for reimbursement of their personal expenses. Classic Americana contended that Linda deposited the reimbursement checks and paid her credit cards, causing injury to Classic Americana. Classic Americana made similar arguments regarding its allegations of unjust enrichment.

When a movant meets the burden of establishing each element of the claim or defense on which it seeks summary judgment, the burden then shifts to the nonmovant to disprove or raise an issue of fact as to at least one of those elements. *See Amedisys, Inc.*, 437 S.W.3d at 511. Because Classic Americana met its summary judgment burden, Linda was required to offer summary judgment evidence raising a fact issue on Classic Americana's claims. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678–79 (Tex. 1979).

Linda and Todd's summary judgment response included (1) an argument regarding impermissible inferences from Todd's assertion of his privilege against self-incrimination, and (2) a one-sentence assertion that "Non-Movants claim genuine issues of material fact exist[ ] as to any and/or all of Movant's claims and submit the affidavit of Defendant Todd Fitzerman, the deposition of Linda Fitzerman (without exhibits), filed with this response and incorporated by such reference for all purposes as if recited verbatim herein, as well as Movant's pleadings, as summary judgment evidence." The response does not point to any particular testimony in either Todd's affidavit or Linda's deposition that raises a genuine issue of material fact on any of Classic Americana's causes of action. The response does not mention any specific cause of action or how Classic Americana's summary judgment evidence was insufficient to establish its right to judgment on any specific cause of action. Although Linda's appellate brief cites to

testimony from her deposition and in Todd's affidavit to support her argument that fact issues existed on Classic Americana's causes of action, she failed to make any such argument in the trial court.

Linda may not defeat summary judgment by raising a fact issue for the first time on appeal that was not expressly presented to the trial court. *City of Houston*, 589 S.W.2d at 679. We therefore overrule all of Linda's complaints about issues of fact that could have been raised in response to Classic Americana's motion for summary judgment, but were not. *See id.*[2]

The only challenge Linda may assert on appeal is the legal sufficiency of the grounds presented by Classic Americana. *See Amedisys, Inc.*, 437 S.W.3d at 512. She makes two such arguments: (1) that because Todd was the sole manager and president of Classic Americana, any misrepresentations were merely made by Todd to himself, and Todd would have defrauded only himself; and (2) that as a matter of law, there can be no conspiracy between a husband and wife. She cites section 101.254 of the business organizations code for the first proposition, and section 3.201 of the family code and *Patel v. Kuciemba*, 82 S.W.3d 589, 595 (Tex. App.—Corpus Christi 2002, pet. denied), for the second.

The business organizations code does not support the notion that as a matter of law, a manager of a limited liability company cannot defraud the company because he is an agent of the company. The code section on which Linda relies addresses who may be an agent of a limited liability company and how an agent may bind the company for his acts. *See* TEX. BUS. ORGS. CODE ANN. § 101.254 (West 2012). But the section immediately following addresses when the company or any of its members may have a cause of action against a governing person or officer for breach of duty in making, authorizing, or performing a contract or transaction between

---

[2] In her reply brief Linda also contends that Classic Americana waived any objections to her deposition testimony and Todd's affidavit because it failed to obtain a ruling from the trial court on any objections. But any such waiver does not affect our conclusion that Linda failed to raise a genuine issue of material fact precluding summary judgment in Classic Americana's favor. The issue is Linda's failure to specify any evidence raising a fact issue, not admissibility of the evidence.

himself and the company. *See* TEX. BUS. ORGS. CODE ANN. § 101.255; *see also Twenty First Century Holdings, Inc. v. Precision Geothermal Drilling, L.L.C.*, No. 03-13-00081-CV, 2015 WL 1882267 at *3–4 (Tex. App.—Austin Apr. 23, 2015, no pet.) (mem. op.)[3] (agreement signed by governing person of limited liability company not enforceable against company because requirements of section 101.255 not met).

Nor does the family code provide that spouses may never conspire with each other. Section 3.201 provides in relevant part that (1) a person is liable for the acts of the person's spouse only if the spouse acts as an agent for the person, and (2) a spouse does not act as an agent for the other spouse solely because of the marriage relationship. TEX. FAM. CODE ANN. § 3.201(a), (c) (West 2006). Section 3.201 and *Patel* address a person's liability as an agent for a spouse. *See, e.g., In re Lipsky*, 411 S.W.3d 530, 547 (Tex. App.—Fort Worth 2013, orig. proceeding), *mand. denied*, 460 S.W.3d 579 (Tex. 2015) ("Shyla [wife] cannot be personally liable for Steven's [husband's] acts merely because of their marriage relationship; he was not her agent solely because they were married," citing section 3.201); *Patel*, 82 S.W.3d at 595 (as a matter of law, fact that parties were married was not evidence of apparent authority, citing section 3.201).[4] Classic Americana is not alleging, however, that Linda is liable for Todd's actions solely because she was his spouse or his agent. Instead, Classic Americana's claims are based on Linda's own actions in participating in the conspiracy to defraud it. *See, e.g., Carroll v. Timmers Chevrolet, Inc.*, 592 S.W.2d 922, 926 (Tex. 1979) ("Once a conspiracy is proven, each

---

[3] The judgment was vacated pursuant to settlement but the opinion was not withdrawn. *Twenty First Century Holdings, Inc. v. Precision Geothermal Drilling, L.L.C.*, No. 03-13-00081-CV, 2015 WL 5098666 (Tex. App.—Austin Aug. 28, 2015) (mem. op. on reh'g).

[4] Linda also cites *Tedder v. Gardner Aldrich, LLP*, 421 S.W.3d 651, 655 (Tex. 2013), for the proposition that section 3.201 of the family code "establishes the sole means of establishing derivative liability of a spouse." The court in *Tedder* held that legal services provided to one spouse in a divorce proceeding are neither a "community debt" (according to the court, "a concept often misused") nor necessaries for which the other spouse is statutorily liable to pay. *Id.* But the court in *Tedder* did not address whether a spouse who had conspired to defraud a third party was nonetheless immune from liability because her co-conspirator was her spouse, the proposition Linda urges here.

co-conspirator 'is responsible for all acts done by any of the conspirators in furtherance of the unlawful combination.'") (quoting *State v. Standard Oil Co.*, 107 S.W.2d 550, 559 (Tex. 1937)).

Linda's challenges to the legal sufficiency of the summary judgment grounds presented by Classic Americana are not well-taken. Summary judgment for Classic Americana was proper. *See* TEX. R. CIV. P. 166a(c). We overrule Linda's first issue.

### B. Exclusion of Evidence

In her second issue Linda complains that the trial court improperly excluded evidence relating to the amount and measure of damages. We review this complaint for abuse of discretion. *Estate of Finney*, 424 S.W.3d 608, 612 (Tex. App.—Dallas 2013, no pet.). A judgment will not be reversed based on the admission or exclusion of evidence unless the appellant establishes that (1) the trial court's ruling was in error and (2) the error was reasonably calculated to cause and probably did cause the rendition of an improper judgment. *Id.* "Reversible error does not usually occur in connection with evidentiary rulings unless the appellant demonstrates the whole case turned on the particular evidence excluded or omitted." *Id.* When reviewing whether evidence was properly admitted or excluded, the appellate court must review the entire record. *Id.*

Linda complains that she was "unable to offer evidence to explain that the major portion of the moneys received by her, which form a major portion of the judgment granted, was received in payment of debts created when Appellee used Appellant's credit cards in the operation of its business." She cites to four specific instances in the trial court record.

First, Linda complains that the trial court sustained an objection to her counsel's opening statement. This is not a complaint about exclusion of evidence, and we do not consider it further. *See, e.g., In re East*, 476 S.W.3d 61, 68 (Tex. App.—Corpus Christi 2014, orig. proceeding) (argument of counsel is not evidence).

Linda's remaining complaints relate to evidence she sought to offer that was contrary to the trial court's summary judgment ruling. Linda complains that the trial court sustained two objections to her counsel's cross-examination of Ellis asking whether Todd's actions were "sanctioned" or "authorized" by Classic Americana. The trial court sustained these objections on the ground that the propriety of Todd's actions had already been determined by the summary judgment ruling. Linda also complains of the exclusion of her own testimony. She contends that after the jury had retired for the day, her counsel called her as a witness, and the parties argued whether or not she could "contest liability." The trial court ruled that "I'm going to preclude her from testimony if that's what you're going to get into," but allowed her counsel to make an offer of proof. On direct examination Linda testified:

- she did not have any active participation in the day-to-day operations of Classic Americana;

- she gave her credit cards to Classic Americana in order to run the business day to day, because Todd and Perkins could not get credit cards for the company;

- she did not simply give her credit cards to Classic Americana; her agreement was that the company could use the cards as long as they were paid in full every month, and the company did pay the cards in full every month;

- Classic Americana also paid her "for items that were not associated with the business of Corvettes of Dallas," but she did not remember exact amounts, which had been highlighted on the credit card statements. Although Classic Americana's counsel objected that no documents had been produced to support this testimony, the trial court stated it would permit testimony on the subject as part of the bill of exception. Linda's counsel, however, passed the witness instead of asking any further questions.

These complaints relate to evidence by which Linda sought to prove that no fraud or conspiracy took place, and that there was nothing wrongful in use of her credit cards. But Linda's liability for fraud and conspiracy was determined by the summary judgment and was not a question for the jury. Although Linda characterizes the evidence as relating to "the amount and measure of damages," none of her complaints arise from the admission or exclusion of evidence

–10–

of any specific amount or category of damages. She declined the opportunity to present specific evidence in her offer of proof. Reviewing the entire record, *see Estate of Finney*, 424 S.W.3d at 612, we conclude the trial court properly excluded evidence by which Linda sought to prove she did not commit fraud or conspire in Todd's fraud and breach of fiduciary duty. We overrule Linda's second issue.

### C. Jury Instructions

Question 3 of the jury charge inquired whether Linda committed theft of property with a value of $20,000 or greater. The jury answered "yes" to this question. There was no corresponding question regarding any damages resulting from theft. Instead, Question 3 was conditioned on a finding of exemplary damages in response to Question 2. In her third issue, Linda contends submission of Question 3 was error because Classic Americana did not plead or prove a claim under the Texas Theft Liability Act. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 134.001–134.005 (West 2011 and Supp. 2015). Linda's counsel objected at trial:

> Question No. 3 I'm objecting to because it hasn't been pled anywhere. This is a definition of theft right out of the Criminal Penal Code and she's not in front of a grand jury to be indicted, but an answer to that question could result in criminal prosecution.

In order to warrant submission to the jury, an issue must be raised by both the pleadings and the evidence. *See* TEX. R. CIV. P. 278; *Olivares v. Mares*, 390 S.W.3d 608, 616 (Tex. App.—Dallas 2012, no pet.). We review claimed error in the jury charge under an abuse of discretion standard. *Webb v. Glenbrook Owners Ass'n, Inc.*, 298 S.W.3d 374, 380 (Tex. App.—Dallas 2009, no pet.) (citing *Tex. Dep't of Human Servs. v. E.B.*, 802 S.W.2d 647, 649 (Tex. 1990)). A trial court's clear failure to analyze and apply the law correctly constitutes an abuse of discretion. *Id.*

Classic Americana responds that Question 3 was based on a Texas pattern jury charge. *See* Pattern Jury Charge ("PJC") 115.43, Comm. on Pattern Jury Charges, State Bar of Tex.,

*Texas Pattern Jury Charges: Business, Consumer, Insurance & Employment* (2014). PJC 115.43 is entitled "Question and Instructions—Theft as a Ground for Removing Limitation on Exemplary Damages (TEX. CIV. PRAC. & REM. CODE § 41.008(c)(13))." Classic Americana argues that Question 3 was relevant to determine whether the limits on exemplary damages set forth in Chapter 41 of the civil practice and remedies code were applicable. Under section 41.008(b), exemplary damages awarded against a defendant may not exceed an amount equal to the greater of two times the amount of economic damages, plus noneconomic damages not to exceed $750,000, or $200,000. TEX. CIV. PRAC. & REM. CODE ANN. § 41.008(b) (West 2015). These limits do not apply, however, to a cause of action based on conduct described as a felony under certain sections of the penal code committed knowingly or intentionally. *Id.* § 41.008(c). Theft as defined in Chapter 31 of the penal code, "the punishment level of which is a felony of the third degree or higher," is included in the enumerated felonies. *Id.* § 41.008(c)(13). Classic Americana argues that if the jury made an affirmative finding in response to Question 3, then any exemplary damages award would not be subject to Chapter 41's limits.

Linda's objection to Question 3 was that Classic Americana did not plead a claim for theft. But Question 3 was submitted not to support an award of damages for theft or to recover damages under the theft liability act, but to provide a ground for removing the limitation on any exemplary damages awarded by the jury for fraud. Classic Americana's operative pleading did seek exemplary damages for fraud. There was no abuse of discretion in submitting Question 3 to the jury. And in any event, because the jury awarded exemplary damages in an amount less than two times the amount of economic damages awarded, the trial court was not required to apply section 41.008 in rendering judgment. Any error in submitting Question 3 to the jury did not cause the rendition of an improper judgment or prevent Linda from properly presenting the case on appeal. *See* TEX. R. APP. P. 44.1. We overrule Linda's third issue.

–12–

**D. Legal and Factual Sufficiency of the Evidence of Damages**

In her fourth issue Linda complains that the evidence is legally and factually insufficient to support the jury's award of actual damages. Linda's sixth issue, asserting that the actual damages awarded against her were excessive, is premised on the same contentions. We therefore address these issues together.

When an appellant challenges the legal sufficiency of the evidence on a matter for which she did not have the burden of proof, she must demonstrate on appeal that there is no evidence to support the adverse findings. *McCullough v. Scarbrough, Medlin & Assocs., Inc.*, 435 S.W.3d 871, 892 (Tex. App.—Dallas 2014, pet. denied). Under a no-evidence point, we consider the evidence in the light most favorable to the verdict, indulging every reasonable inference in support. *Id.* A legal sufficiency challenge fails if there is more than a scintilla of evidence to support the judgment. *Id.* When we evaluate a factual sufficiency challenge, we must consider and weigh all the evidence; we can set aside a verdict only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Id.* We must not substitute our judgment for that of the jury and are mindful in our review that jurors are the sole judges of the credibility of the witnesses and the weight to be given their testimony. *Id.*

Linda asserts that the jury's actual damages award of $2,980,392.60 included the face amounts of checks that were returned for nonsufficient funds. She contends this measure of damages is improper, and urges that a proper measure would be extra costs incurred because of the issuance of the checks, such as bank fees, and costs incurred because the payees did not receive the funds transmitted by the check. She argues that the face amount of the checks is not a measure of "how much Appellee either paid or for which the check was returned."

Linda also argues that other amounts included in the testimony and report of Jules Ellis, Classic Americana's expert witness, were unsupported and conclusory.[5] Linda contends that Ellis, the forensic accountant whose findings we have summarized above, lacked the required expertise to offer her opinions and used improper methodology in preparing her report and the schedules and spreadsheets supporting it. Linda did not assert these objections at trial.

"Bare, baseless opinions will not support a judgment even if there is no objection to their admission in evidence." *City of San Antonio v. Pollock*, 284 S.W.3d 809, 816 (Tex. 2009). But "when a reliability challenge requires the court to evaluate the underlying methodology, technique, or foundational data used by the expert, an objection must be timely made so that the trial court has the opportunity to conduct this analysis." *Id.* at 817 (quoting *Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 233 (Tex. 2004)). And objections to Ellis's qualifications must have been raised in the trial court in order to preserve error. *See Duncan-Hubert v. Mitchell*, 310 S.W.3d 92, 105 (Tex. App.—Dallas 2010, pet. denied) (collecting cases). We conclude that because Linda failed to object to Ellis's qualifications, methodology, techniques, and data at trial, she has waived these objections. *See Pollock*, 284 S.W.3d at 817; *Duncan-Hubert*, 310 S.W.3d at 105. She may assert only her complaints of any opinions offered by Ellis that are without reliable basis. *See Pollock*, 284 S.W.3d at 816.

Ellis testified at trial to the results of her forensic accounting investigation. Her report and supporting exhibits were admitted into evidence. The record reflects that the jury's award of actual damages includes $1,723,057.30 calculated by Ellis to be the total of the face amounts of 320 checks returned for nonsufficient funds, minus the bank fees paid by Classic Americana in

[5] Specifically, Linda argues that the jury's award of $519,607.40 in response to Question 4 of the jury charge was "unsupportable." Question 4 inquired about damages for unjust enrichment. Because Classic Americana elected to recover for fraud rather than unjust enrichment, the jury's award of damages in response to Question 4 is not part of the judgment, we need not address the sufficiency of the evidence to support it. *See* TEX. R. APP. P. 44.1 (judgment may not be reversed on appeal unless error complained of probably caused rendition of improper judgment). We also reject Linda's challenge to the sufficiency of the evidence regarding credit card "chargebacks," as we discuss below.

connection with these checks.[6]  The remaining $1,257,335.30 is the total of Ellis's calculations of the irregularities found in the forensic investigation.  Ellis did not testify that Classic Americana paid the face amounts of the returned checks, and the exhibits supporting her testimony do not include any documentation of payment of those amounts.  Ellis testified on cross-examination:

> Q.  Okay. Schedule C, that's the one that's got returned checks, I believe, right?
>
> A.  That's correct.
>
> Q.  Do you know if any of these were made good?
>
> A.  I have no documentation that can tell what was made good and what wasn't.

In closing argument, Classic Americana's counsel listed the totals from each of Ellis's schedules and provided two calculations for actual damages, one totaling $1,257,335.30 and one totaling $2,980,392.60.  As discussed, the latter amount chosen by the jury included the face amounts of the returned checks.  But Ellis's report and testimony, the only evidence offered by Classic Americana on the issue, did not provide support for an award of the face amounts of the returned checks.[7]

If, as we conclude here, part of damages verdict lacks sufficient evidentiary support, the proper course is to suggest a remittitur of that part of the verdict.  *Larson v. Cactus Util. Co.*, 730 S.W.2d 640, 641 (Tex. 1987); TEX. R. APP. P. 46.3 (court of appeals may suggest remittitur).

---

[6] Ellis's report shows the total amount of the face amounts of the returned checks to be $1,728,493.33.  Ellis's report also reflects, however, that Classic Americana "incurred $5,436.00 in bank fees related to these transactions."  The difference between these two numbers is $1,723,057.30.

[7] Linda also complains of the $35,909.96 in damages reflected on Ellis's Schedule N for credit card "chargebacks."  Ellis's report explains that the "chargebacks" were charges on Linda's credit card account for which she was reimbursed by Classic Americana.  After reimbursement, Linda reported to her credit card company that the charges were fraudulent, and payment was withheld from each vendor affected.  The vendors tried to collect the funds from Classic Americana, as well as posting negative reviews of the company on the internet.  Linda argues the amount of the chargebacks is not the correct measure of damages, "because, as a result of those charge backs, [Classic Americana] merely owes money it owed before it used [Linda's] credit cards to pay its debt."  While "theoretically, a loss might be the loss of a valuable supplier," Linda argues that no such evidence was presented to the jury. Schedule N, however, itemizes the vendors, amounts, and dates in question for each chargeback, and Linda does not dispute that she was paid in full by Classic Americana each of the amounts in question, that the vendors were not paid, or that the vendors sought to collect from Classic Americana.  We conclude the evidence was legally and factually sufficient to support the inclusion of the amount shown on Ellis's Schedule N in the damages awarded to Classic Americana.

Consequently, we suggest a remittitur of $1,723,057.30, the face amounts of the checks returned for nonsufficient funds minus the fees paid, leaving an actual damages award to Classic Americana of $1,257,335.30, the total of the damages calculated by Ellis in the forensic investigation for irregularities other than the face amounts of the returned checks. As the prevailing party at trial, Classic Americana must be given the option of accepting the remittitur or having the case remanded for a new trial. *Bechtel Corp. v. CITGO Prods. Pipeline Co.*, 271 S.W.3d 898, 922 (Tex. App.—Austin 2008, no pet.). If the remittitur is timely filed, we will modify the judgment accordingly and affirm as modified. *See McLeod v. Gyr*, 439 S.W.3d 639, 653 (Tex. App.—Dallas 2014, pet. denied). If the remittitur is not timely filed, we must reverse the trial court's judgment and remand the cause. TEX. R. APP. P. 46.3 (if remittitur not timely filed, court of appeals must reverse trial court's judgment); TEX. R. APP. P. 44.1(b) (court of appeals may not order separate trial solely on unliquidated damages if liability contested); *Estrada v. Dillon*, 44 S.W.3d 558, 562 (Tex. 2001) (remand for new trial only on damages issue is improper even where appellant did not challenge liability post-judgment).

We sustain Linda's complaint that the face amounts of the returned checks should not have been included in the trial court's damages award, and we suggest remittitur. In all other respects Linda's fourth and sixth issues are overruled.

### E. Exemplary Damages Question

In her fifth issue Linda complains that the exemplary damages question was improper because it did not include an instruction that the jury's verdict must be unanimous. Linda did not object to the charge on this basis in the trial court, and has therefore waived her complaint. *See Cruz v. Andrews Restoration, Inc.*, 364 S.W.3d 817, 829–30 (Tex. 2012) (complaint to jury charge waived unless specifically included in an objection) (citing TEX. R. CIV. P. 274 and TEX. R. APP. P. 33.1(a)(1)). And in any event, the record reflects that when the jury returned its

verdict, the trial court inquired whether the verdict was unanimous, and the jury answered in the affirmative. We overrule Linda's fifth issue.

### F. Propriety of Exemplary Damages

Linda's seventh issue complains that the jury's award of exemplary damages for fraud in response to Question 2 was improper. She argues that the exemplary damages award was "tainted by the same errors" as the award of actual damages for fraud in response to Question 1, specifically, that the "overstated" amount of actual damages "affected the amount of exemplary damages awarded." She also argues the jury was improperly influenced by the "unsupported and inappropriate jury question regarding theft." She cites no authority in support of her arguments.

Although we agree that a portion of the actual damages awarded in the judgment was not supported by sufficient evidence, it does not necessarily follow that the award of exemplary damages was excessive. The jury awarded exemplary damages of $1,500,000, approximately half of the actual damages awarded. If Classic Americana accepts our suggestion of remittitur, these exemplary damages would exceed actual damages of $1,257,335.30 by approximately $250,000. Although Linda does not provide argument or authority on the subject, we nonetheless consider whether the jury's award of punitive damages is excessive under the standards set forth in *Alamo National Bank v. Kraus*, 616 S.W.2d 908, 910 (Tex. 1981). *See Ellis Cnty. State Bank v. Keever*, 888 S.W.2d 790, 798 (Tex. 1994) (when upholding punitive damage award, court of appeals must detail relevant evidence explaining why it supports or does not support award in light of *Kraus* factors); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 41.013 (West 2015) (judicial review of award).

The *Kraus* factors include (1) the nature of the wrong, (2) the character of the conduct involved, (3) the degree of culpability of the wrongdoer, (4) the situation and sensibilities of the parties concerned, and (5) the extent to which such conduct offends a public sense of justice and

propriety. *Keever*, 888 S.W.2d at 798 (citing *Kraus*, 616 S.W.2d 910); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 41.011 (listing factors). In Question 2, the exemplary damages question in the jury charge, the jury was instructed as to these factors.

The wrong in this case was fraud. The character of Linda's conduct was her conspiracy with Todd, in breach of his fiduciary duty, to intentionally defraud Classic Americana of over one million dollars, using the funds for her own personal expenses. One example of Linda's degree of culpability was shown in Schedule K of Ellis's report. Schedule K reflected that although Linda was not employed by Classic Americana and was not a documented contractor of the company for any purpose, thirty-seven checks and wire transfers totaling $519,786.56 of company funds were written directly to Linda or paid expenses for her benefit between April 2009 and January 2010. The trial court determined, as a matter of law, that Linda committed fraud, conspired with Todd to defraud Classic Americana, and was unjustly enriched by her conduct. We have concluded that the trial court did not err by granting summary judgment in Classic Americana's favor. Factors such as remorse, remedial measures, and ability to pay punitive damages are relevant in determining the situation and sensibilities of the parties. *See Ellis Cnty. State Bank v. Keever*, 936 S.W.2d 683, 688 (Tex. App.—Dallas 1996, no writ) (opinion on remand). Although Linda argued that she gave her credit cards to Classic Americana so that it could pay its business expenses, she never attempted to offer any documents or other proof to support her contentions in response to Classic Americana's summary judgment motion, nor did she offer any proof at trial regarding her ability to pay punitive damages, or any remedial measures she had taken. The only testimony she proffered was to deny that any wrongdoing had occurred. Finally, although we consider that the harm to Classic Americana was economic, Linda's repeated fraud offends a public sense of justice and propriety. *See Hernandez v. Sovereign Cherokee Nation Tejas*, 343 S.W.3d 162, 178 (Tex. App.—Dallas 2011, pet. denied)

(discussing fifth *Kraus* factor). We conclude that the jury's award of punitive damages meets the criteria set forth in *Kraus* and is not excessive even in light of our suggested remittitur of actual damages. We overrule Linda's seventh issue.

CONCLUSION

We overrule Linda's first, second, third, fifth, and seventh issues. We sustain Linda's fourth and sixth issues only to the extent of suggesting remittitur of $1,723,057.30 of the actual damages awarded to Classic Americana. In accordance with rule 46.3 of the Texas Rules of Appellate Procedure, if Classic Americana files with this Court within fifteen (15) days from the date of this opinion a remittitur of $1,723,057.30 of the actual damages awarded to Classic Americana we will modify the trial court's judgment to award Classic Americana actual damages in the amount of $1,257,335.30, and affirm the trial court's judgment as modified. If the suggested remittiturs are not filed timely, we will reverse the trial court's judgment and remand the cause for new trial. TEX. RS. APP. P. 46.3, 44.1(b).

/Lana Myers/
LANA MYERS
150528F.P05                                                    JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas
# JUDGMENT

LINDA FITZERMAN, Appellant

No. 05-15-00528-CV      V.

CLASSIC AMERICANA, LLC, Appellee

On Appeal from the 68th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-14-12166.
Opinion delivered by Justice Myers; Justices
Francis and Lang-Miers participating.

In accordance with this Court's opinion of this date, we suggest remittitur of $1,723,057.30 of the actual damages awarded to appellee Classic Americana, LLC. In accordance with rule 46.3 of the Texas Rules of Appellate Procedure, if Classic Americana, LLC files with this Court within fifteen (15) days from the date of this Court's opinion a remittitur of $1,723,057.30 of the actual damages awarded to Classic Americana, LLC, we will modify the trial court's judgment to award Classic Americana, LLC actual damages in the amount of $1,257,335.30, and affirm the trial court's judgment as modified. If the suggested remittiturs are not filed timely, we will reverse the trial court's judgment and remand the cause for new trial.

It is **ORDERED** that appellee Classic Americana, LLC recover its costs of this appeal from appellant Linda Fitzerman.

Judgment entered this 13th day of April, 2016.